983 F.2d 1341
 142 L.R.R.M. (BNA) 2469, 124 Lab.Cas. P 10,569,
8 IER Cases 1453
 William BALDRIDGE; Ralph Hunt; Richard Lake; Danny Dale
Mattox; Marce M. Smith; Robert Hamilton; David Munn;
Norman Wiler; Dennis Klaiber; William Spencer; Daniel
Gray; James E. Johnson; and Ronald Dillow, Plaintiffs-Appellees,
v.
KENTUCKY-OHIO TRANSPORTATION, INC.; Island Creek
Corporation, Defendants-Appellants,
United Mine Workers of America, Region 1, Defendant.
 No. 91-6379.
 United States Court of Appeals,
Sixth Circuit.
 Argued Oct. 8, 1992.
Decided Jan. 14, 1993.
Rehearing and Rehearing En Banc
Denied March 9, 1993.
 
 Dwight O. Bailey, Bailey, Hensley & Leadingham, Flatwoods, KY (argued and briefed), for plaintiffs-appellees.
 William A. Hoskins, III (argued and briefed), Timothy R. Coleman, Jackson & Kelly, Lexington, KY, for defendants-appellants.
 Before: GUY and BATCHELDER, Circuit Judges; and CELEBREZZE, Senior Circuit Judge.
 RALPH B. GUY, Jr., Circuit Judge.
 
 
 1
 Arguing preemption under federal labor law, defendant employer appeals the remand to state court of former employees' claims challenging their discharge. The thrust of plaintiffs' suit, which had been removed from state to federal court, was that defendants had fired them for attempting to organize and join the United Mine Workers Union. We do not reach the preemption issue because our review of the record causes us to conclude that we lack jurisdiction to consider this appeal, and accordingly dismiss it.
 
 I.
 
 2
 The thirteen plaintiffs were formerly employed by defendant Kentucky-Ohio Transportation, Inc. (KOT), a wholly owned subsidiary of defendant Island Creek Corporation (Island Creek). Plaintiffs had signed union authorization cards and had otherwise been active in efforts to unionize KOT's South Shore facility. The United Mine Workers Union represented other Island Creek employees, but the collective bargaining agreement did not cover these plaintiffs. After their termination, following the sale of the South Shore facility, plaintiffs filed a complaint with the National Labor Relations Board alleging the same facts and claims asserted in the current matter. At some unspecified time, but apparently before plaintiffs initiated the present suit,[1] the NLRB declined to file a complaint against defendants. Plaintiffs did not appeal the board's decision.
 
 
 3
 Instead, plaintiffs filed a wrongful discharge and breach of contract suit in Kentucky court, claiming that their termination violated public policy in favor of the right to organize and contravened certain company policies and procedures as expressed in the employee handbook. Plaintiffs also claimed that the United Mine Workers Union breached its duty of fair representation for, among other things, failing to protect their jobs. The complaint also alleged that KOT, Island Creek, and the union acted in bad faith in failing to honor an alleged agreement that the union would be deemed the collective bargaining unit for KOT employees when a majority of them signed union authorization cards.[2]
 
 
 4
 Defendants removed the case to federal court on the basis of federal question jurisdiction. The defendant corporations then moved for dismissal or summary judgment, arguing that the challenged actions were essentially unfair labor practices and required the interpretation of a collective bargaining agreement, and were therefore preempted by federal labor law. Finding that the NLRB had not designated the union as the exclusive bargaining representative for KOT employees, the district court dismissed the action against the union.
 
 
 5
 The district court then agreed that the state law claims against KOT and Island Creek essentially amounted to unfair labor practices under 29 U.S.C. §§ 157 and 158, such as to fall within the exclusive jurisdiction of the NLRB. The court concluded, however, that the NLRB's refusal to issue a complaint left the Kentucky courts "free to hear the present matter on applicable state law theories." Believing that the claims for wrongful discharge, breach of contract, and outrageous conduct could be resolved only by reference to state law, the court stated that it "lack[ed] subject matter jurisdiction" and remanded the case "pursuant to 28 U.S.C. § 1447 for proper disposition under Kentucky law."
 
 
 6
 KOT and Island Creek appeal the remand order, requesting that this court order the case returned to the district court for dismissal on grounds of preemption.[3] The union is not a party to this appeal.
 
 II.
 
 7
 Although plaintiffs do not contest defendants' claim that this court has authority to consider this appeal, we are obligated to ensure that we have jurisdiction over this matter. An order of remand on jurisdictional grounds is neither a final judgment for purposes of 28 U.S.C. § 1291 nor a ruling falling within the "collateral order" exception to that rule. Beard v. Carrollton R.R., 893 F.2d 117, 120 (6th Cir.1989). More importantly, however, we face the seemingly ironclad bar to review--no matter how the appeal is fashioned--which is contained in 28 U.S.C. § 1447(d). With an exception not relevant here, § 1447(d) declares: "An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise...." If this statute meant what is says, that would be an end of the matter and our review clearly would be foreclosed.
 
 
 8
 The Supreme Court stated long ago, however, that the § 1447(d) proscription is not as broad as it seems. In Thermtron Products, Inc. v. Hermansdorfer, 423 U.S. 336, 96 S.Ct. 584, 46 L.Ed.2d 542 (1976), the district judge had remanded a diversity suit due to the crowded federal docket. The judge did not question the jurisdictional propriety of the removal. Relying on § 1447(d), the Sixth Circuit refused to consider the defendant's mandamus petition, which requested relief on the ground that the district judge had been powerless to order remand for the reason he had given.
 
 
 9
 The Supreme Court reversed, holding that § 1447(d) precludes review only of those remand orders issued pursuant to § 1447(c). As § 1447(c) then read:
 
 
 10
 If at any time before final judgment it appears that the case was removed improvidently and without jurisdiction, the district court shall remand the case....[4]
 
 
 11
 In Thermtron, the district judge had not purported to remand on a § 1447(c) basis; the statute was never mentioned and there was no suggestion that the case had been removed "improvidently and without jurisdiction." Since the remand had instead been based "on grounds wholly different from those upon which § 1447(c) permits remand," 423 U.S. at 344, 96 S.Ct. at 589, the judge had exceeded his authority and the remand order was reviewable.
 
 
 12
 In Carnegie-Mellon University v. Cohill, 484 U.S. 343, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988), the Court reaffirmed that the facially unequivocal language of § 1447(d) does not, in fact, preclude review of all remand orders. The district court in that case had remanded pendent state claims after the plaintiffs had withdrawn their lone federal claim. Remand had not been predicated on any provisions in the removal statutes. Section 1447(c) did not apply because removal of the case (federal and related state claims together) had been proper, and § 1441(c), authorizing discretionary remand of "separate and independent" claims, did not apply because the state claims had been pendent to the federal claim. Reviewing this non-statutorily-based remand, the Supreme Court resolved a circuit split and clarified that the doctrine of pendent jurisdiction does indeed allow district courts to remand pendent state claims. The Court repudiated Thermtron 's implication that remand orders could be based only on the grounds specified in the removal statute. Carnegie-Mellon, 484 U.S. at 355-56, 108 S.Ct. at 621-22. Finally, since the remand had not been based on § 1447(c), it was subject to review by extraordinary writ.
 
 
 13
 Since Thermtron, appellate courts have paved other detours around § 1447(d)'s bar to review. Under the so-called Pelleport/ Clorox doctrine first advanced by the Ninth Circuit, a remand based upon the district court's resolution of "a substantive [issue] on the merits apart from any jurisdictional decision" was reviewable as a final order. Pelleport Investors, Inc. v. Budco Quality Theatres, 741 F.2d 273, 276 (9th Cir.1984). The remand in Pelleport --a diversity case--was not based on lack of subject matter jurisdiction or any defect in removal but, rather, on the court's determination that the parties' forum-selection agreement was enforceable. To immunize this variety of remand orders from review "would deprive [the objecting party] of its right to appeal a substantive determination of contract law," a determination that was conclusive on the parties. Id. at 277. The court noted that the policy behind § 1447(d) is to prevent parties from using "the appeal process to protract litigation over jurisdictional issues." Id. This policy is "inapplicable," however,
 
 
 14
 where a district court bypasses the jurisdictional arguments and reaches the merits of a contract dispute.... Any delay caused by an appeal of the contract issue is a delay which must be countenanced.
 
 
 15
 Id.
 
 
 16
 The Ninth Circuit subsequently relied on Pelleport to review a remand order that had been based on a district court's conclusion that the defendant had contractually waived its removal rights. Clorox Co. v. United States Dist. Court, 779 F.2d 517 (9th Cir.1985). Like the remand in Pelleport, the Clorox remand turned on the consideration of a collateral, non-jurisdictional issue, and thus fell outside the purview of § 1447(d).
 
 
 17
 This circuit endorsed the Ninth Circuit's reasoning, concluding that § 1447(d) did not bar review of a remand order issued after a hearing on the validity of a forum-selection clause. In Regis Associates v. Rank Hotels (Management) Ltd., 894 F.2d 193 (6th Cir.1990), we agreed that a remand order is reviewable "when it is based on a substantive decision on the merits of a collateral issue as opposed to just matters of jurisdiction." Id. at 194.
 
 
 18
 The Third Circuit recently recognized another variety of reviewable remand orders in In re TMI Litigation Cases Consolidated II, 940 F.2d 832 (3d. Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 1262, 117 L.Ed.2d 491 (1992). Following a comprehensive inquiry into the history of § 1447(d) and its exceptions, the court concluded it had authority to review a remand order which was based on the district court's belief that the statute investing federal courts with jurisdiction over certain public liability actions was unconstitutional.[5] The court acknowledged that the district court had indeed remanded the case for what it (albeit erroneously) saw as a lack of subject matter jurisdiction--and thus, unlike the Pelleport/ Clorox line of cases, the district court's " 'substantive decision' " was not " 'apart from any jurisdictional decision.' " In re TMI, 940 F.2d at 843 (quoting Pelleport, 741 F.2d at 276 (emphasis added by Third Circuit)). Moreover, the district court had explicitly cited § 1447(c) as the statutory authority for the remand order.
 
 
 19
 Even though the "heart of this [substantive] decision was jurisdictional," however, the TMI court believed that Congress never intended that § 1447(d) would bar review of a "jurisdictional determination ... resting ... upon the conclusion that the entire statutory scheme authorizing removal is unconstitutional." Id. at 845. The court explained that the § 1447(d) bar is raised only when the remand order is based on a conclusion that the jurisdictional requirements as set forth by Congress had not been met in the case at hand. Here, however, the remand turned on the belief that Congress had no power to authorize federal court jurisdiction over such cases in the first place. While somewhat artful, this analysis was advanced in support of the entirely defensible view that "in enacting section 1447(d), Congress did not intend to vest the district courts with the authority to make final determinations regarding the constitutionality of federal statutes." Id. at 843.
 
 
 20
 The Third Circuit's decision and the forum selection cases along the Pelleport/ Clorox line reflect the prevailing view that § 1447(d)'s prohibition against appellate review is fairly narrow. But they are not the only word on the subject. In cases raising preemption concerns of the sort at issue here, although in a slightly different procedural setting, several circuits have concluded that they lacked jurisdiction to entertain the mandamus petitions challenging the orders.[6]
 
 
 21
 The Ninth Circuit, the very court which generated the "substantive decision" exception to § 1447(d), declined to review remand orders which had been based on a conclusion that federal law did not preempt claims that had been pleaded as state law causes of actions. In Whitman v. Raley's Inc. and its companion case, Krentz v. Connecticut General Life Insurance Co., 886 F.2d 1177 (9th Cir.1989), a suit alleging wrongful discharge (and other non-federal claims) and one alleging "tortious refusal to pay benefits" had been removed to federal court, the former because it ostensibly required interpretation of a collective bargaining agreement, the latter on the ground that it was an artfully pled ERISA claim. After removal, the district courts then granted the plaintiffs' motions to remand, after concluding that the claims were not, after all, preempted by federal law.
 
 
 22
 It could not be doubted that the district courts had remanded for lack of subject matter jurisdiction, so that the orders would seem to fall within the § 1447(d) prohibition. The question, however, was "whether in the process of making that decision on the basis of lack of federal preemption, a substantive law determination was made that would bring these cases within the Clorox exception," Whitman, 886 F.2d at 1180. To answer that question, the Ninth Circuit drew a helpful distinction between "complete preemption" and "the substantive defense of preemption." Id. at 1181.
 
 
 23
 According to Whitman, when a district court, considering the removal of a suit alleging state law violations, decides whether "Congress intended a preemptive force so powerful as to displace entirely any state cause of action within the ambit of the federal cause of action," the court is considering only a jurisdictional issue. Id. at 1180-81. The focus there is "on whether it was the intent of Congress to make the cause of action a federal cause of action and removable despite the fact that the ... complaint identifies only state claims." Id. at 1181. This jurisdictional inquiry is distinct from the question whether a legal defense of preemption may be raised. Whether the defendant has a valid preemption defense "would be a matter for trial" by a court that has concluded it has jurisdiction over the case. Id. "If the court rules that the claim is not 'completely preempted,' the federal court lacks jurisdiction to rule on the substantive preemption defense." Id.
 
 
 24
 Since the remands in the Whitman and Krentz cases were based on a determination that there was no complete preemption, the orders necessarily were pursuant to § 1447(c), which requires remand for lack of subject matter jurisdiction. Id. As such, the orders were unreviewable under Thermtron.[7] To allay the resulting concerns about the preclusive effect of its preemption rulings, the Ninth Circuit emphasized that, once the district courts had determined that they had no jurisdiction over the cases, they had no authority to rule on substantive defenses. Id.
 
 
 25
 The Eleventh Circuit followed similar reasoning in declining to review remand orders that had turned on conclusions about preemption. In Glasser v. Amalgamated Workers Union, 806 F.2d 1539 (11th Cir.1986), the district court had remanded a suit charging a union with wrongful denial of insurance benefits. The case had been removed as arising under ERISA. The district court had then remanded the case on the ground that it lacked subject matter jurisdiction in that the claims, which also included breach of fiduciary duty and fraud allegations, were all state claims and the defendant's federal claims were merely defenses.
 
 
 26
 The Eleventh Circuit noted that, while the district court had indeed engaged in a sort of "substantive" inquiry within the meaning of the Pelleport/ Clorox exception, that inquiry was undeniably "related to the question of jurisdiction [rather than] the substantive rights of the parties." Glasser, 806 F.2d at 1540. The order thus fell within the general rule against review. As did the Ninth Circuit in Whitman and Krentz, and again in Hansen v. Blue Cross of California, 891 F.2d 1384 (9th Cir.1989),[8] the court concluded that the unreviewable nature of the remand order would not foreclose further litigation concerning preemption. In finding that it lacked jurisdiction, the district court "did not reach the merits of the preemption argument," and the state court was free to "rule that ERISA does preempt [plaintiffs'] state law claims and that [plaintiffs] must proceed" under that federal statute. Glasser, 806 F.2d at 1540.
 
 
 27
 The Fifth Circuit found a similar remand unreviewable, although for a slightly different reason. In Soley v. First National Bank of Commerce, 923 F.2d 406 (5th Cir.1991), the court was faced with an ambiguous remand order that seemed to be based on both a finding of lack of complete preemption and a belief that there could be no substantive defense of preemption. Id. at 409. Although it chose one basis over the other and construed the order as solely jurisdictional, the appeals court found dispositive the district court's reliance on § 1447(c). The § 1447(d) prohibition kicked in, according to Soley, "because the district court did not clearly and affirmatively state that it relied on a non-1447(c) ground." Id. at 409. Like the Ninth and Eleventh Circuits, the Fifth Circuit took "comfort" in the knowledge that interpreting the order as purely jurisdictional "will have no preclusive effect on the state court's consideration of the substantive preemption defense." Id.
 
 
 28
 In a case decided before the Ninth Circuit's articulation of the distinction between a remand based on complete preemption and one reaching the merits of a preemption defense, the Eighth Circuit found it had jurisdiction to review an order remanding, for lack of preemption, a state claim for vexatious refusal to pay insurance benefits. In re Life Ins. Co. of North America, 857 F.2d 1190 (8th Cir.1988). According to the Eighth Circuit, the district court did not issue its order pursuant to § 1447(c). Id. at 1193 n. 1. As to the preclusive effect of the district court's ruling that ERISA did not preempt the state claim, the court said it would be binding on the state court "as res judicata and the law of the case." Id. at 1193.
 
 
 29
 The authority the Eighth Circuit cited in support of this conclusion, however, demonstrates the importance of the distinction between complete preemption and the preemption defense. The court quoted the Seventh Circuit's declaration that, " 'when a lower federal court has jurisdiction over the subject matter and the parties, its adjudication is the law of the case and its judgment is binding on all other courts...." Id., quoting United States ex rel. Lawrence v. Woods, 432 F.2d 1072, 1076 (7th Cir.1970), cert. denied, 402 U.S. 983, 91 S.Ct. 1658, 29 L.Ed.2d 148 (1971) (emphasis added). But, as the Ninth, Eleventh, and Fifth Circuits have found, a remand for lack of complete preemption, that is, a remand for lack of subject matter jurisdiction in the district court, does not foreclose state-court litigation of the preemption defense. The Seventh Circuit's conclusion regarding the binding nature of the district court's rulings was specifically premised on the existence of subject matter jurisdiction in that lower court. That premise disappears when the remand order is based on lack of complete preemption.
 
 
 30
 As noted above, this circuit addressed the reviewability of remand orders when adopting the Pelleport/ Clorox "substantive decision" exception to § 1447(d) in a case involving a forum selection clause. Regis, 894 F.2d 193. We also have had occasion to consider the reviewability of a remand order involving a district court's preemption analysis. In Beard v. Carrollton R.R., 893 F.2d 117 (6th Cir.1989), plaintiff brought an action in state court against his former employer, the railroad, and the insurance company which had issued the group medical and life insurance policy covering railroad employees. The insurance coverage was mandated by a collective bargaining agreement negotiated under the federal Railway Labor Act. Count one alleged, among other things, wrongful failure to provide benefits; count two was for intentional and malicious interference with contractual rights and intentional infliction of emotional distress.
 
 
 31
 After removing the case to federal court, the Beard defendants sought to dismiss the claims as preempted by the Railway Labor Act. The court dismissed count one without prejudice and remanded count two to state court. Significantly, the court said that the removal of the case had been proper, "because count one was really a claim under the Railway Labor Act" and was completely preempted by it. Id. at 120. However, the court believed that as count two was only remotely related to the collective bargaining agreement, it lacked subject matter jurisdiction to decide the merits of that count.
 
 
 32
 Citing Thermtron, this court reasoned that the order would be unreviewable, even in mandamus, if it had been issued "under the authority of any statute."[9] Beard, 893 F.2d at 121. Here, there were only two possible statutory bases for the remand. Section 1447(c) could not have been the basis, we said, since the court had specifically found that the case had not been "removed improvidently and without jurisdiction," as the then-controlling version of the statute read. Id. Nor could the remand have been ordered pursuant to § 1441(c), which invests district courts with the authority to remand claims that are "separate and independent" from the removable claim. The judge did not state that he was exercising his § 1441(c) authority to remand these separate claims but, rather, that he "lack[ed] jurisdiction to decide the merits." Id. Therefore, the remand order, mysterious as it was, could not have been issued on the basis of any statutory mandate and, under Thermtron, was not subject to the § 1447(d) bar to review.
 
 
 33
 A similarly opaque remand order was considered recently in In re Amoco Petroleum Additives Co., 964 F.2d 706 (7th Cir.1992). There, an employee and her union sued Amoco over its use of a video camera in the hallway outside the women's locker room. The union sought a restraining order and the employee sought damages for invasion of privacy and emotional distress. Amoco removed the case, arguing that it required the interpretation of the collective bargaining agreement. After the plaintiffs' first motion to remand was denied without explanation, Amoco filed a summary judgment motion and the union dropped out of the case. Then, also without explanation, the court granted the renewed motion for remand and declined to consider the summary judgment motion. Amoco filed a mandamus petition seeking review of this order.
 
 
 34
 Because the district judge had failed to indicate why he had remanded the case, the Seventh Circuit, like this court in Beard, was left to forage among the possible reasons to determine if the order was of the sort unreviewable under § 1447(d). The only plausible basis for this particular remand order, the court decided, was lack of subject matter jurisdiction. But fastening on this reason did not solve the riddle; the court had to know whether the judge had believed he lacked jurisdiction at the outset (i.e., at the time of removal), or whether he believed that the jurisdictional defect appeared later.[10]
 
 
 35
 The timing question is dispositive because, despite the change in the wording of § 1447(c) since Thermtron and many of the above cases, courts still read that section as authorizing remand when a district court determines that jurisdiction had been lacking at the time of removal, rather than later (following a jurisdictionally sound removal).[11] Therefore, if the district judge in Amoco had thought that the removal had been jurisdictionally proper but that jurisdiction had "vanished" when the union dropped out, the remand--even though based on a finding of lack of jurisdiction--would be reviewable, as § 1447(c) envisions remands only for defective removals.[12] In other words, if the district judge had thought that jurisdiction had been lacking all along, the order would be beyond appellate review.
 
 
 36
 Since it was the only way to reconcile the district court's earlier order denying the plaintiffs' remand motion with the later order granting the remand motion after the union dropped out, the Seventh Circuit concluded that the district judge must have thought that removal--with the union as a plaintiff--had been jurisdictionally proper, but that jurisdiction vanished with the union's exit from the case. The court therefore proceeded to consider the propriety of the remand order.
 
 III.
 
 37
 Unfortunately, we must play the same sort of guessing game in the present case. We do know that the order was based on the judge's belief that the court "lacks subject matter jurisdiction." We also know that the judge explicitly cited § 1447,[13] unlike the orders considered in Beard and Amoco. It is unclear, however, whether the district judge believed that he lacked jurisdiction all along, or whether he had somehow lost jurisdiction following a proper removal. Nor is it clear that an answer to that question would solve the problem, as it did in Amoco, given the judge's explicit invocation of § 1447.
 
 
 38
 Looking behind the face of the order, as we allowed ourselves to do in Beard, it is possible to infer that the judge believed that removal had indeed been proper. He did, after all, exercise authority over the case when he dismissed the claims against the union. However, his subsequent finding of a lack of jurisdiction was not tied to the exit of the union.[14] Rather, it followed from a determination that the NLRB's refusal to issue a complaint left the state court "free to hear the present matter on applicable state law theories," and from a belief that state law governed the interpretation of the collective bargaining agreement.
 
 
 39
 As it appears that the NLRB's refusal preceded the initiation of this suit, we cannot infer that the judge found it a post-removal, jurisdiction-defeating event (like the post-removal withdrawal of the union in Amoco ). Nor would the judge's conviction that state law governs the interpretation of the union contract have sprung from anything that followed removal; nothing indicates that he would not have held that conviction at the outset. Therefore, while it is tempting to adopt Amoco 's approach and find the remand reviewable as based on a belief (however erroneous) that a post-removal event had destroyed jurisdiction, the facts of this case are not amenable to such a resolution.
 
 
 40
 Defendants invite us to find that the Pelleport/ Clorox "substantive decision" doctrine would permit review of the remand order here. The district court's decision was "based on a substantive decision on the merits of a collateral issue," according to defendants. This reasoning is too facile. We find that the so-called "collateral issue" was not collateral at all within the meaning of the Pelleport/ Clorox exception to § 1447(d). The preemption inquiry here, unlike an inquiry into the enforceability of a forum-selection clause, necessarily "related to the question of jurisdiction." Glasser, 806 F.2d at 1540. Or, as the Third Circuit put it, "the heart of this decision was jurisdictional." In re TMI, 940 F.2d at 843.[15] We therefore cannot invoke the help of the "substantive decision" doctrine in this case.
 
 
 41
 What we are left with, then, is the district court's explicit reference to § 1447 as the authority for remanding the case for lack of subject matter jurisdiction. This citation, absent in Amoco, Beard, and In re Life Insurance Co. of North America, 857 F.2d 1190 (8th Cir.1988), was deemed dispositive in Soley. And, although the judge did exercise jurisdiction over the case when he dismissed the claims against the union, we have no explicit finding that removal had been proper. In this regard, the present case is again distinguishable from Beard, in which we found the order reviewable.
 
 
 42
 We therefore interpret this order as falling within the general category of remands specifically invoking the authority of § 1447(c), and thus subject to the well settled rule that § 1447(d) "prohibits review of all remand orders issued pursuant to § 1447(c) whether erroneous or not...." Thermtron, 423 U.S. at 343, 96 S.Ct. at 589. See also Gravitt v. Southwestern Bell Tel. Co., 430 U.S. 723, 97 S.Ct. 1439, 52 L.Ed.2d 1 (1977). In so concluding, we are guided by the policy, manifest in § 1447(d), of "prevent[ing] delay in the trial of remanded cases by protracted litigation of jurisdictional issues...." Thermtron, 423 U.S. at 351, 96 S.Ct. at 593 (citation omitted). As we interpret the district court's findings to be purely jurisdictional, the defendants may raise the merits of their preemption defense in state court.
 
 
 43
 Accordingly, we DISMISS this appeal for lack of jurisdiction pursuant to 28 U.S.C. § 1447(d).
 
 
 44
 CELEBREZZE, Senior Circuit Judge, dissenting.
 
 
 45
 I must respectfully dissent from the majority opinion's determination that this court lacks jurisdiction to consider the merits of the appeal sub judice. The majority correctly points out that before reviewing the merits of this appeal, this court must first address the threshold issue of whether appellate review of this case is proper. I do not take issue with the majority's meticulous and accurate definition of the law regarding the standard of review for remand orders of the district court. Rather, I disagree with the majority's application of the law to the instant case. For reasons which I will explain below, I believe this court does indeed have jurisdiction to review the district court's order.
 
 
 46
 My initial point of contention revolves around the distinction between a remand of a case based upon complete preemption versus reaching the merits of a preemption defense. As the majority opinion appropriately points out, a body of case law has developed which holds that a remand order based upon complete preemption is reviewable because, at its heart, it is a jurisdictional order. See Whitman v. Raley's Inc., 886 F.2d 1177 (9th Cir.1989). This is separate and distinct from raising the defense of preemption in a subsequent state proceeding which necessarily should be considered a remand order pursuant to 28 U.S.C. § 1447(c). It is important to note that the district court first determined that the NLRB has exclusive authority to determine issues of unfair labor practices pursuant to San Diego Unions v. Garmon, 359 U.S. 236, 244, 79 S.Ct. 773, 779, 3 L.Ed.2d 775 (1959). It is my contention that because the district court judge first made a finding that the entire area is preempted, this court does indeed have jurisdiction to review the propriety of this finding.
 
 
 47
 Secondly, I assert that the district court's remand order was more than a purely jurisdictional decision which would also permit appellate review. We, therefore, must determine what the basis was on which the district court judge remanded the case. Unfortunately, in the case at bar, the remand order is far from clear and, as the majority states, we are forced to play a guessing game. The confusion arises from the remand order itself. It is quite true that the district judge concluded that "[s]ince the claims ... depend solely on Kentucky law, this Court lacks subject matter jurisdiction." The district court then purported to remand the case pursuant to 28 U.S.C. § 1447. While this language would seem to make this order unreviewable, I believe we must look to the reasoning of the district court which led to this conclusion. The mere incantation of the mantra "s 1447" should not be enough to preclude review if it appears to this court that this is not a § 1447 order. I do not believe the majority would disagree. Hence, this court must attempt to determine the justifications supporting the order to determine if they are consistent with a § 1447 order.
 
 
 48
 I recognize that an erroneous remand order is not, standing alone, sufficient to supply this court with jurisdiction. Thermatron Prods., Inc. v. Hermansdorfer, 423 U.S. 336, 345-46, 96 S.Ct. 584, 590, 46 L.Ed.2d 542 (1976); Regis Assoc. v. Bank Hotels (Management) Ltd., 894 F.2d 193 (6th Cir.1990). Such an order is reviewable when the order is based on a substantive decision on collateral issues apart from solely jurisdictional concerns. Id. It appears to me the district court did, in fact, make substantive decisions in issuing its remand order.
 
 
 49
 In the case at bar, the NLRB refused to issue an unfair labor practices complaint. They have exclusive jurisdiction over such claims. This was a correct finding of the district court. However, the district court judge then determined that because the NLRB had refused to issue a complaint, relief could still be found in the state court under Kentucky law. This is not a purely jurisdictional holding, but rather a mixed finding of jurisdiction and substance, requiring a substantive analysis of Kentucky wrongful discharge law. Furthermore, the district court also dismissed the union from the case. I believe the majority concedes that this was a substantive decision on the merits. Accordingly, I believe that this court does indeed have jurisdiction to review the district court's order as it was based, at least in part, on substantive determinations.
 
 
 50
 The fact that the NLRB issued no complaint is not sufficient to allow a similar claim to be prosecuted in the Kentucky state courts. The law of Kentucky in this regard is preempted by federal law. As the entire area is preempted, the remand order, I believe, could not properly have been issued. The district court made this general preemption finding but circumvented the preemption issue with a substantive, albeit incorrect, determination of both federal labor and Kentucky state law.
 
 
 51
 It is my view that the district court's reasoning is flawed for two reasons. The district court relied on the Kentucky case of Pari-Mutuel Clerk's Union v. Ky. Jockey Club, 551 S.W.2d 801 (Ky.1977) for the proposition that Kentucky state courts will entertain suits for wrongful discharge when the NLRB has refused to issue a complaint. It seems to me the district court has misinterpreted the holding of Pari-Mutuel. What the Supreme Court of Kentucky actually held in that case was: "[b]ecause the NLRB which normally has jurisdiction over labor disputes, has for some time declined to assert jurisdiction in any proceeding involving the horse racing industry, this action was brought in the Boone County Circuit Court." The Pari-Mutuel court then held that the Kentucky courts were preempted from issuing injunctive relief because that was the province of the NLRB, however, plaintiffs could bring a wrongful discharge action under K.R.S. 336.130. Thus, the Pari-Mutuel court's decision was based upon the fact that the NLRB had refrained from involvement in the entire industry.
 
 
 52
 It must be noted, the issue of preemption as it relates to the NLRB's refusal to assert jurisdiction to an entire industry is not before this court and this court need not rule on the propriety of said issue. In the case at bar, the NLRB clearly has not refrained from dealing with cases involving the coal mining industry. Therefore, this is a case where the NLRB has refused to institute a complaint on the specific facts of the case. I know of no authority for the proposition that preemption would apply only in cases where the NLRB has asserted jurisdiction. Such a proposition would emasculate the concept of preemption in unfair labor practice cases.
 
 
 53
 Additionally, I have serious misgivings about the validity of Pari-Mutuel. This court has recently held as follows:
 
 
 54
 The court has interpreted the NLRA to prohibit certain types of governmental interference in the collective bargaining process. The Court has articulated two distinct NLRA-based prohibitions: Garmon preemption, see San Diego Building Trades Council v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959); and Machinists preemption, see also Machinists v. Wisconsin Employment Relations Comm'n., 427 U.S. 132, 96 S.Ct. 2548, 49 L.Ed.2d 396 (1976). Garmon preemption is based predominantly on the primary jurisdiction of the National Labor Relations Board. The Court succinctly described the doctrine: "The so-called Garmon rule protects the primary jurisdiction of the NLRB to determine in the first instance what kind of conduct is either prohibited or protected by the NLRA." Metropolitan Life Ins. Co. v. Massachusetts, 471 U.S. 724, 748, 105 S.Ct. 2380, 2394, 85 L.Ed.2d 728 (1985) citation omitted). Garmon preemption establishes that
 
 
 55
 States may not regulate activity that the NLRA protects, prohibits, or arguably protects or prohibits.... [T]he Garmon rule prevents States not only from setting forth standards of conduct inconsistent with the substantive requirements of the NLRA, but also from providing their own regulatory or judicial remedies for conduct prohibited or arguably prohibited by the Act.
 
 
 56
 Wisconsin Dep't. of Indus. v. Gould, Inc., 475 U.S. 282, 286, 106 S.Ct. 1057, 1061, 89 L.Ed.2d 223 (1986)....
 
 
 57
 ... In Machinists, the Court considered whether the Wisconsin Employment Relations Commission could order a union to cease a concerted practice of refusing to work overtime. The union's action was not protected by the NLRA. However, the court held that Wisconsin could not declare that the union's actions were unlawful:
 
 
 58
 Our decisions hold that Congress meant that these activities, whether of employer or employees, were not to be regulable by States any more than by the NLRB, for neither States nor the Board is "afforded flexibility in picking and choosing which economic devices of labor and management shall be branded as unlawful."
 
 
 59
 Machinists, 427 U.S. at 149, 96 S.Ct. at 2557 (quoting NLRB v. Insurance Agents, 361 U.S. 477, 498, 80 S.Ct. 419, 432, 4 L.Ed.2d 454 (1962)).
 
 
 60
 Phoenix Engineering v. MK-Ferguson of Oak Ridge, 966 F.2d 1513, 1520 (6th Cir.1992).
 
 
 61
 In Motor Coach Employees v. Lockridge, 403 U.S. 274, 285-91, 91 S.Ct. 1909, 1917-20, 29 L.Ed.2d 473 (1971), the Court reviewed the reasons for the application of the judicial doctrine of preemption in the area of labor law. The Supreme Court in Lockridge recognized three areas in which the courts have made exceptions to Garmon, viz.: 1) where Congress has affirmatively indicated that judicial power should be utilized; 2) where the Court cannot presume that Congress meant to "intrude so deeply into areas traditionally left to local law; and, 3) where the law is so structured the judicial function yields to an administrative one. Id., at 297-8, 91 S.Ct. at 1923.
 
 
 62
 The State of Kentucky, or any other state, cannot circumvent an area of labor law which has been expressly preempted unless it fits into one of these exceptions. Once the district court determines that a claim is expressly covered by federal statute, it must determine if the action falls under one of the exceptions. If it does not, this must be the end of the analysis. The facts of the instant case do not fit into any of the exceptions. There is no indication that Congress has affirmatively indicated that state courts be able to handle claims in cases in which the NLRB has refused to file a complaint. Nor can the issues involved be said to be so deeply rooted in local law. Rather, it was the need for national uniformity which led Congress to create a body of federal labor law. Finally, the job of sorting through these claims simply cannot be described as "administrative". It is a job that requires much scrutiny and judgment. Accordingly, the facts of this case fail to fit the patterns needed for an exception to Garmon.
 
 
 63
 Moreover, this court has previously stated as follows:
 
 
 64
 The Supreme court has stated that "the Board's General Counsel has unreviewable discretion to refuse to institute an unfair labor practice complaint." Vaca v. Sipes, 386 U.S. 171, 182, 87 S.Ct. 903, 913, 17 L.Ed.2d 842 (1967). Moreover, numerous courts of appeals have routinely concluded that such action is not subject to judicial review. (Citations omitted.)
 
 
 65
 Jackman v. NLRB, 784 F.2d 759, 763 (6th Cir.1986).
 
 
 66
 In summary, I believe that because the district judge initially found the entire area to be preempted by federal law and then made two substantive decisions, first dismissing the union from the case and second holding that cases of wrongful discharge could be brought in Kentucky courts when the NLRB has determined not to issue a complaint, this case falls into an exception to the non-reviewability of remand orders.
 
 
 67
 For the reasons herein explained, I maintain this Court does have jurisdiction over the case and would reverse the Order of the District Court remanding the case to Greenup County Circuit Court. Furthermore, I would remand the case to the District Court with instructions to enter a judgment in favor of defendants finding plaintiff's claims preempted by the exclusive authority given to the NLRB.
 
 
 
 [1]
 The precise date of the NLRB's refusal is not disclosed in the briefs or in the joint appendix. However, both briefs' recitation of the case suggest that the plaintiffs' resort to the NLRB, and the NLRB's rejection of their claims, preceded the filing of the complaint in this matter. An affidavit filed by the plaintiffs, dated August 29, 1991 (two months after the case was removed), states that "[t]he NLRB has refused to issue any complaint and take jurisdiction over the claim," but it does not specify when this occurred
 
 
 [2]
 The district court's memorandum opinion clarifies that this understanding was incorporated into the union's "national bituminous coal wage agreement" with Island Creek, and additionally required Island Creek to remain neutral with respect to employees' unionizing activities
 
 
 [3]
 For reasons pertinent to our analysis of jurisdiction over the remand order, defendants also frame their requested relief as a petition for writ of mandamus
 
 
 [4]
 As discussed below, this text has been modified and a slightly different version applies to the current case
 
 
 [5]
 The statute at issue was the Price-Anderson Amendments Act of 1988, 42 U.S.C. § 2011 et seq
 
 
 [6]
 Defendants here request, in the alternative, a writ of mandamus
 
 
 [7]
 Section 1447(d) "prohibits review of all remand orders issued pursuant to § 1447(c) whether erroneous or not and whether review is sought by appeal or by extraordinary writ." Thermtron, 423 U.S. at 343, 96 S.Ct. at 589
 
 
 [8]
 The Hansen court found the remand order unreviewable, but expressed a little more concern about a potential "law of the case" problem which defendants might face when raising the preemption defense in the state court proceeding. Hansen, 891 F.2d at 1389-90. Still, the court said, since "[t]he district court's ultimate conclusion was that it lacked jurisdiction," it was an order falling with § 1447(c) and was thus subject to the bar of § 1447(d). Id
 
 
 [9]
 This court thus declined to interpret Thermtron as holding only that remand orders issued pursuant to § 1447(c), alone, fall within § 1447(d)'s bar to review
 
 
 [10]
 See also In the Matter of Shell Oil Co., 966 F.2d 1130, 1132 (7th Cir.), later proceeding granting writ of mandamus, 970 F.2d 355 (1992) (citations omitted):
 Whether we have the authority to issue the writ of mandamus Shell seeks depends on the unstated reason for the remand. If the district court believed that the case was properly removed, but that the stipulation [affecting the amount in controversy] justified a remand, then we may review the order. If, however, the district court believed ... that jurisdiction was missing at the outset, then 28 U.S.C. § 1447(d) would block any review, even though we might disagree with that decision.
 
 
 [11]
 As noted above, the older version of § 1447(c) called for remand whenever the judge realized "that the case was removed improvidently and without jurisdiction." Thermtron makes clear that this phrase referred to the time of removal. 423 U.S. at 344, 96 S.Ct. at 589. The current version of this section, which also addresses the timeliness of remand motions, appears at first to allow remand upon a finding that jurisdiction vanished sometime after removal. The section now provides: "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." Although the new language suggests that removal is no longer the critical jurisdictional juncture, courts have not construed it in this revolutionary way. Of the cases examined above, those that considered remand orders governed by the amended statute include In re TMI Litigation, 940 F.2d 832; Amoco, 964 F.2d 706; Soley, 923 F.2d 406; and Whitman and Krentz, 886 F.2d 1177. The legislative history of the Judicial Improvements Act (Pub.L. 100-702), the 1988 law which changed this text, reveals no intent to direct district courts to look beyond the time of removal in deciding remand motions based on lack of jurisdiction
 
 
 [12]
 "[W]e understand Carnegie-Mellon [which involved remand of pendent state claims after the federal claim was eliminated] to permit review when the district judge believes that removal was proper and that later developments authorize remand." Amoco, 964 F.2d at 708
 
 
 [13]
 Defendants make much of the fact that the judge did not cite subsection (c), but only "s 1447." As subsection (c) is the only one which sets forth the bases for remand, we treat the reference to "s 1447" as a reference to "s 1447(c)."
 
 
 [14]
 Because the judge did not, contrary to defendants' suggestion, base his jurisdictional decision on the dismissal of the claims against the union, we cannot resolve the problem by analogizing this case to Carnegie-Mellon, 484 U.S. 343, 108 S.Ct. 614. In that case, the Court reviewed the remand of pendent state claims after the plaintiff dropped the federal claim. Here, not only is there no ostensibly significant post-removal event cited by the judge, but, as in Amoco, "there are no pendent claims; the [entire dispute is] whether the claims rest on state or federal law." Amoco, 964 F.2d at 708
 
 
 [15]
 See also Hansen v. Blue Cross of Cal., 891 F.2d 1384, 1388 (9th Cir.1989) ("The district court's decision that Hansen's plan was not subject to ERISA, rather than being apart from the question of subject matter jurisdiction, was necessary to determine whether such jurisdiction existed.")