Lawrence VAN METER; Catherine Van Meter, Plaintiffs–Appellees,

v.

STATE FARM FIRE AND CASUALTY COMPANY, Defendant–Appellant.

No. 92–2056.

United States Court of Appeals, Sixth Circuit.

Argued June 18, 1993.

Decided Aug. 9, 1993.

Thomas Lazar (argued and briefed), Farmington Hills, MI, for plaintiffs-appellees.

Jon D. Vander Ploeg (argued and briefed), Smith, Haughey, Rice & Roegge, Grand Rapids, MI, for defendant-appellant.

Before: KEITH and JONES, Circuit Judges; and PECK, Senior Circuit Judge.

NATHANIEL R. JONES, Circuit Judge.

Defendant–Appellant State Farm Fire and Casualty Company ("State Farm") appeals from the district court's Order of Remand. As a general rule, remand orders are not reviewable. Since, from the record, we are unable to determine if this case should be governed by the general rule, we shall remand for the limited purpose of having the district court clarify its Order of Remand along the lines outlined below.

## I

On January 23, 1991, a fire occurred at the residence of Plaintiffs–Appellees Lawrence and Catherine Van Meter. In force at the time was a fire insurance policy the Van Meters had purchased from State Farm. The Van Meters gave notice of destruction caused by the fire to State Farm, and filed a Sworn Statement in Proof of Loss ("Proof of Loss") pursuant to the terms of the insurance policy. In this statement, the Van Meters claimed that they were owed $70,472.56 for fire-related destruction ($46,843.00 [sic] relating to the dwelling itself; $23,628.78 [sic] relating to the contents of the dwelling) under the terms of the insurance policy. State Farm denied liability.

On January 17, 1992, the Van Meters filed a Complaint and Jury Demand ("Complaint") against State Farm in a Michigan state court. In Count I of the Complaint, they noted filing the Proof of Loss and requested damages "in excess of Ten Thousand ($10,000.00) Dollars plus costs, interest and attorney fees" for State Farm's refusal to honor its alleged contractual obligations. J.A. at 11. In Count II, they sought compensation for "great mental and emotional distress, anguish and other damages" due to State Farm's "bad faith, malicious acts, and refusals" in an amount "in excess of Ten Thousand ($10,000.00) Dollars plus costs, interest and attorney fees." *Id.* at 12. In Count III, they alleged that State Farm's actions constituted a violation of the Michigan Consumer Protection Act, Michigan Compiled Laws Annotated §§ 445.901–445.922 (West 1989). For that violation, the Van Meters sought, *inter alia:* "1. To recover damages for the fire, damages to the building, contents and living expenses; 2. [To o]btain[ ] a $250.00 statutory penalty; [and] 3. Reimbursement for attorney fees...." J.A. at 13.

On March 13, 1992, State Farm filed a Notice of Removal in the United States District Court for the Eastern District of Michigan. Removal was based on diversity of citizenship (which is not disputed in this appeal) and the allegation that "[t]he matter in controversy exceeds, exclusive of costs and disbursements, the value of Fifty Thousand Dollars ($50,000)" (which is disputed in this appeal). *Id.* at 5.

Also on March 13, 1992, State Farm filed its Answer, Affirmative Defense & Reliance on Jury Demand ("Answer") in the federal district court. Of note concerning this appeal, the Answer included the following:

8. Should a judgment be entered that plaintiffs are not entitled to recover under the insurance contract, plaintiffs are obli-

gated to repay to the defendants those benefits paid during the pendency of the investigation of this loss, including but not necessarily limited to:

 a. $34,197.85 paid to plaintiffs' mortgagee;

 b. $1,417.50 paid to plaintiffs for living expenses for rent;

 c. $2,000.00 paid to plaintiffs as an advance on their claim for damages to contents;

 d. $777.45 paid on behalf of plaintiffs to protect the residence after the fire, i.e., to board up the property; and

 e. $6,034.91 paid on behalf of plaintiffs pursuant to MCL 500.2845.

9. Should a judgment be entered that plaintiffs are entitled to recover under the insurance contract, defendant is entitled to a set-off and plaintiffs are obligated to repay to the defendants those benefits paid during the pendency of the investigation of this loss, including but not necessarily limited to:

 a. $34,197.85 paid to plaintiffs' mortgagee;

 b. $1,417.50 paid to plaintiffs for living expenses for rent;

 c. $2,000.00 paid to plaintiffs as an advance on their claim for damages to contents;

 d. $777.45 paid on behalf of plaintiffs to protect the residence after the fire, i.e., to board up the property; and

 e. $6,034.91 paid on behalf of plaintiffs pursuant to MCL 500.2845.

*Id.* at 19–20.

On March 30, 1992, the Van Meters filed an Answer to Affirmative Defenses. With respect to Paragraph 8 and Paragraph 9 of State Farm's Answer, the Van Meters asserted that they "neither admit nor deny the allegation contained therein and leave Defendant to its proof." *Id.* at 26.

Count III was dismissed on April 7, 1992, upon stipulation of the parties, by Order of the district court.

On April 30, 1992, the Van Meters filed an Offer to Accept Judgment Less Than $50,000.00. The filing specifically stated that the Van Meters "offer to limit the Judgment in the above styled cause to $40,000.00 including all claims, interest, costs and attorney fees." *Id.* at 43.

On May 14, 1992, the Van Meters moved to remand the case to the state court whence it came, arguing that the amount in controversy did not exceed $50,000, exclusive of interest and costs. Specifically, they argued that, in light of the payments that State Farm indicated in its Answer it had made:

 the Plaintiffs cannot receive a judgment in excess of the claimed amounts under the policy of fire insurance. Therefore, the total paid of $44,427.71 deducted from the $70,472.56 total claim leaves a balance of $26,044.85 as an actual loss plus open items that remain at $250.00 per month since the date of loss which at the present time is equal to $4000.00.

*Id.* at 47–48. They further noted that "the Plaintiffs ... filed an offer to accept a judgment limiting all of Plaintiffs claims including actual amounts owed under the fire insurance policy plus damages for emotional distress for bad faith refusal and including all court costs, interest and attorney fees to $40,000.00." *Id.* at 48. Along with this motion and apparently in accordance with Rule 81.1(b)(2) of the Local Rules of the United States District Court for the Eastern District of Michigan, the Van Meters itemized the damages they were claiming:

| | | |
|---|---|---|
| 1. | Plaintiffs' fire insurance claim Contents and Structure | $26,044.85 |
| 2. | Open items Rent until new home is purchased | $ 4,000.00 |
| 3. | Emotional Distress for bad faith refusal | $10,000.00 |
| 4. | Interest, cost and attorney fees | $ –0– |

J.A. at 49.

On June 1, 1992, State Farm filed Defendant's Statement and Brief in Opposition to Plaintiffs' Motion to Remand. It maintained that:

> the amount in controversy for jurisdictional purposes is that sum claimed by the plaintiff in the complaint. . . .
>
> In the present action, plaintiffs' complaint alleges a claim for breach of a fire insurance contract and resulting damages in the amount of $70,472.56 (not including amounts for compensable additional living expenses), and a tort claim for a bad faith refusal to pay fire insurance proceeds for an unspecified amount of damages. Because the sum claimed by the plaintiffs in the complaint controls the determination of the amount in controversy, this Court has jurisdiction to hear the present action.

*Id.* at 56–57. Arguing that the determination of the amount in controversy for purposes of federal jurisdiction is made from the face of the complaint at the time the action is commenced, State Farm contended that its Answer to the Van Meters' Complaint, which averred that payments were made on the Van Meters' behalf (thus potentially reducing the amount at issue), should not properly be considered by the court in making its jurisdictional determination. As well, State Farm maintained that the Van Meters' Offer to Accept Judgment Less Than $50,000.00 did not serve to diminish the amount in controversy for jurisdictional purposes because it likewise was made after the action was commenced.

On June 8, 1992, the district court made known to the parties its intention to analyze the amount-in-controversy issue in terms of whether the defendant has met its burden of proving, by a preponderance of the evidence, that the amount in controversy exceeded the jurisdictional amount. It set forth its intention in its Order for Additional Information in which it specifically "ORDERED that . . . defendant[ ] may file a response statement on or before June 26, 1992 setting forth in detail the facts or other information on which the defendant relies in alleging the amount in

controversy." *Id.* at 69 (emphasis in original).

State Farm responded on June 26, 1992 by filing Defendant's Brief in Response to Order for Additional Information. Therein, it set forth the facts that the Van Meters referred to the Proof of Loss in their Complaint and that this Proof of Loss listed fire damage amounting to $70,452.56 [sic]. It also set forth the fact that the fire insurance policy in force at the time of the fire contained coverage limits of $46,843 for the dwelling; $2,343 for debris removal (dwelling); $2,343 for trees, shrubs and plants; $32,790 for the contents of the dwelling; and $1,640 for debris removal (contents). Noting the additional fact that the Van Meters sought in their Complaint in excess of an additional $10,000 for mental anguish and emotional distress, State Farm concluded that the amount in controversy indeed exceeded the jurisdictional amount.

On July 24, 1992, the district court filed its Order Granting Plaintiff's Motion for Remand. It generally held that State Farm did not meet its burden of proving, by a preponderance of the evidence, that the amount-in-controversy requirement was met. It based its conclusion on the facts that "[i]n total, defendant has paid some $44,000 of plaintiff's [sic] $74,000 claimed loss," *id.* at 107 (footnote omitted), and that, with regard to Count II of the Complaint, the Van Meters "have submitted . . . a signed statement claiming damages of *exactly $10,000*," *id.* (emphasis added). It maintained that, "[a]ssuming all of defendant's affirmative defenses fail, and that plaintiffs succeed in full on their claims, plaintiffs will be entitled to damages in the neighborhood of $40,000, some $10,000 less than the jurisdictional minimum." *Id.* at 108. Finally, it noted that, though the amount in controversy is to be determined as of the commencement of the action, State Farm put forth no facts to show that its payments for the benefit of the Van Meters were made after the commencement of the action. The district court thus ordered the action remanded to the state court in its Order of Remand, filed July 24, 1992.

State Farm filed a direct appeal from the Order of Remand on August 19, 1992. It

contended that we have jurisdiction pursuant to 28 U.S.C. § 1291 (1988) ("The courts of appeals ... shall have jurisdiction of appeals from all final decisions of the district courts....") and Rule 3 of the Federal Rules of Appellate Procedure.

At oral argument on June 18, 1993, this court noted that remand orders are reviewable only in limited circumstances. Not convinced at that time that this case presented such circumstances, we ordered the parties to brief the following issue not addressed or alluded to in their opening briefs:

> Whether this court has jurisdiction to hear this appeal in light of: 28 U.S.C. § 1447 (1988); *Thermtron Products v. Hermansdorfer,* 423 U.S. 336, 343, 96 S.Ct. 584, 589, 46 L.Ed.2d 542 (1976); *Gravitt v. Southwestern Bell Tel. Co.,* 430 U.S. 723, 723, 97 S.Ct. 1439, 1440, 52 L.Ed.2d 1 (1977) (per curiam); *Volvo of America Corp. v. Schwarzer,* 429 U.S. 1331, 1331–33, 97 S.Ct. 284, 285, 50 L.Ed.2d 273 (1976) (opinion in chambers); *Baldridge v. Kentucky-Ohio Transportation, Inc.,* 983 F.2d 1341, 1343–50 (6th Cir.1993); *In re Shell Oil Co.,* 966 F.2d 1130, 1132–33 (7th Cir.1992); *In re Amoco Petroleum Additives Co.,* 964 F.2d 706, 708–09 (7th Cir.1992). Particular attention should be paid to the import, if any, of the 1988 amendment to 28 U.S.C. § 1447(c) as it relates to the district court's decision in this case.

*Van Meter v. State Farm Fire & Casualty Co.,* No. 92–2056 (6th Cir. June 22, 1993) (supplemental order). *See Baldridge,* 983 F.2d at 1343 ("Although plaintiffs do not contest defendants' claim that this court has authority to consider this appeal, we are obligated to ensure that we have jurisdiction over this matter.").

## II

■ If a district court remands a case based on the grounds listed in 28 U.S.C.

§ 1447(c) (1988),[1] this court cannot review the remand order. 28 U.S.C. § 1447(d) (1988); *Thermtron,* 423 U.S. at 343, 96 S.Ct. at 589. We are without jurisdiction to review a remand order grounded in Section 1447(c) even if based on erroneous principles or analysis. *Thermtron,* 423 U.S. at 343, 96 S.Ct. at 589 (Section 1447(d) "prohibits review of all remand orders issued pursuant to § 1447(c) whether erroneous or not and whether review is sought by appeal or by extraordinary writ. This has been the established rule under § 1447(d) and its predecessors stretching back to 1887."); *Gravitt,* 430 U.S. at 723, 97 S.Ct. at 1440 (though the Fifth Circuit had vacated a district court's remand order because the district court "had employed erroneous principles in concluding that it was without jurisdiction," the Supreme Court reversed, holding that the district court's decision that the action had been "improperly removed" plainly falls under Section 1447(c) and thus is not reviewable—erroneous or not); *see also Schwarzer,* 429 U.S. at 1331–33, 97 S.Ct. at 284–85 (review of district court's order remanding a case pursuant to Section 1447(c) is barred by Section 1447(d), even though the district court "may have been wrong in its analysis"). The district court need not cite Section 1447(c) in its remand order for the Section 1447(d) bar to apply. "Several decisions show that the appeals courts will liberally construe the district court's reasons for a remand in order to find that the court invoked § 1447(c) and thereby avoid reviewing the challenged order." *In re Romulus Community Schools,* 729 F.2d 431, 435 (6th Cir.1984) (citing cases).

■ Since remand orders grounded in Section 1447(c) are not reviewable, it is important to determine the nature and scope of that provision. Section 1447(c) calls for a remand when it appears that the district court "lacks subject matter jurisdiction."

---

**1.** Section 1447(c) reads:

A motion to remand the case on the basis of any defect in removal procedure must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal. A certified copy of the order of remand shall be mailed by the clerk to the clerk of the State court. The State court may thereupon proceed with such case.

Courts, including this one, have interpreted this provision as necessarily tied to a temporal reference point, namely, the time of removal.[2] Thus, if a district court determines subject matter jurisdiction to have been lacking at the time of removal, and remands on that basis, the remand order is a Section 1447(c) remand order and is nonreviewable. However, if a district court determines subject matter jurisdiction to have existed at the time of removal, yet remands for alleged lack of subject matter jurisdiction based on some post-removal event(s), the remand order is not a Section 1447(c) remand order and is reviewable on petition for a writ of mandamus. *Baldridge*, 983 F.2d at 1348–49 (after noting that the "timing question is dispositive," we proceeded to determine whether the district court found subject matter jurisdiction to have existed at the time of removal, only to have been allegedly defeated by some post-removal event(s); in the end, we concluded that, "while it is tempting to ... find the remand reviewable as based on a belief (however erroneous) that a post-removal event had destroyed jurisdiction, the facts of this case are not amenable to such a resolution," and found the remand order nonreviewable); *see also Shell Oil*, 966 F.2d at 1132 ("Whether we have the authority to issue the writ of mandamus Shell seeks depends on the unstated reason for the remand. If the district court believed that the case was properly removed, but that the stipulation [to limit damages to less than the federal jurisdictional requirement] justified a

remand, then we may review the order. If, however, the district court believed ... that jurisdiction was missing at the outset, then 28 U.S.C. § 1447(d) would block any review, even though we might disagree with that decision."); *Amoco Petroleum Additives*, 964 F.2d at 708 ("Was there subject-matter jurisdiction at the time of removal, vanishing because of the change in the identity of the plaintiffs? If so, we ... may review the remand order.... If the judge believed that subject-matter jurisdiction was missing at the outset, however, § 1447(d) puts the remand beyond our ken."). *Cf. Albright v. R.J. Reynolds Tobacco Co.*, 531 F.2d 132, 135 (3d Cir.) ("[i]t is settled that '[g]enerally the right of removal is decided by the pleadings, viewed as of the time when the petition for removal is filed'") (citation omitted), *cert. denied*, 426 U.S. 907, 96 S.Ct. 2229, 48 L.Ed.2d 832 (1976); *Cromwell v. Equicor–Equitable HCA Corp.*, 944 F.2d 1272, 1277 (6th Cir.1991), *cert. dismissed*, ── U.S. ──, 113 S.Ct. 2, 120 L.Ed.2d 931 (1992); 14A Charles A. Wright et al., *Federal Practice & Procedure* § 3721, at 208–13 & n. 71 (2d ed. 1985 & West Supp.1993) (citing cases); Charles A. Wright, *Law of Federal Courts* § 38, at 152–53 (3d ed. 1976).

Given this, we are faced with the issue of whether the district court in the instant case found that the amount-in-controversy requirement was met as of the time of removal, only to have been allegedly defeated

---

**2.** This has been true despite the 1988 amendment to Section 1447(c), Pub.L. No. 100–702, § 1016(c)(1), 102 Stat. 4642, 4670 (1988). The previous version of Section 1447(c) called for a remand when the district court realized "that the case was removed improvidently and without jurisdiction." The amended Section 1447(c), at issue in the instant case, provides that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." As we commented in *Baldridge:*

> Although the new language suggests that removal is no longer the critical jurisdictional juncture, courts have not construed it in this revolutionary way.... The legislative history of the Judicial Improvements Acts (Pub.L. 100–702), the 1988 law which changed this text, reveals no intent to direct district courts to look beyond the time of removal in deciding remand motions based on lack of jurisdiction.

983 F.2d at 1348 n. 11; *see also Shell Oil*, 966 F.2d at 1133 ("It is at least conceivable that an amendment to § 1447 makes the district judge's reason [for remanding a case] irrelevant. *St. Paul[ Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938)] held that diversity jurisdiction depends on circumstances at the time of removal. In 1988 Congress amended § 1447(c) to provide that ... ['i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.' Does the reference to 'any time before final judgment' mean that changes after removal can eliminate jurisdiction and require remand? We think not.... Neither the text of the revised § 1447(c) nor its legislative history implies that Congress altered the traditional view....").

by some post-removal event(s). If the district court so found, we may review the remand order on petition for a writ of mandamus.[3] Unfortunately, given the state of the record, we find ourselves unable to determine conclusively whether the district court found the amount-in-controversy requirement to have been met as of the time of removal.

It *is* clear that, *as to Count I*, the district court believed, whether based on erroneous presuppositions or not, that the amount in controversy for purposes of federal subject matter jurisdiction was approximately $30,000 at the time of the commencement of the lawsuit, as well as, we may readily deduce, the time of removal. If the district court concluded from this *alone* that the amount-in-controversy requirement was not met, we would consider a related remand order to be based on Section 1447(c) grounds. As such, we could not review it.

There is more to consider, however. Specifically, with regard to Count II of the Complaint, the district court found that the Van Meters, post-removal, "submitted ... a signed statement claiming damages of *exactly $10,000.* Accordingly, plaintiffs seek from defendant a total of approximately $40,000." J.A. at 107 (emphasis added). From this, we can determine that the district court indeed believed that the jurisdictional requirement was not met *at some point after removal.* Whether the court understood the amount of the Van Meters' claim in Count II, when combined with approximately $30,000 the court found to have been in controversy in Count I plus any amount associated with Count III (which was apparently dismissed post-removal), to be less than the federal jurisdictional requirement at the time of removal is nebulous at best. *See* State Farm's Supp.Br. at 9 ("[j]ust what the district judge was deciding, here, is not made very clear in his opinion"); *id.* at 12 (the district court's "reason for [remand] is, at best, unclear").

The Seventh Circuit, in *Shell Oil*, 966 F.2d 1130, was faced with a situation similar to ours. In that case, the plaintiff filed a stipulation subsequent to a removal limiting damages sought to less than the federal jurisdictional threshold. Shortly thereafter, the district court remanded the case without giving reasons why. The Seventh Circuit found itself unable to determine whether the district court considered the amount-in-controversy requirement to have been met as of the time of removal. It found the temporal reference point critical in evaluating whether it could review the remand order: "[I]t matters whether the district court remanded the case because in its view jurisdiction was missing at the time of removal or because of later events. We need to know which." *Id.* at 1133. Thus, it found it proper to direct the district court to expound upon its reasons for remand.

### III

Based on the foregoing, we find it proper to remand to the district court for the limited purpose of supplementing the record to indicate whether it understands that "the amount in controversy satisfies the statutory minimum," J.A. at 109, as of the time of removal. Upon receipt of the district court's response, we shall determine the reviewability of the Order of Remand and, if it is reviewable, whether a writ of mandamus shall issue.

---

3. We note that, though we are considering what has been styled as a direct appeal, we may treat it as a petition for a writ of mandamus for purposes of reviewing the Order of Remand. *See, e.g., J.O. v. Alton Community Unit Sch. Dist. 11*, 909 F.2d 267, 271 (7th Cir.1990) ("We will follow the same course as we have in the past and treat the direct appeal from the remand order as a petition for a writ of mandamus."); *see also Hammons v. Teamsters, Chauffeurs, Warehousemen & Helpers of Am., Local 20*, 754 F.2d 177, 179 (6th Cir.1985) ("A court without direct appellate jurisdiction nevertheless is empowered to treat an appeal as though it were a petition for a writ of mandamus made pursuant to 28 U.S.C. § 1651.").