In the

# United States Court of Appeals
## For the Seventh Circuit

Nos. 01-3081 & 01-3418

BILLY E. ADKINS, Administrator of the
ESTATE OF HELENA R. ADKINS,

*Plaintiff-Appellee,*

*v.*

ILLINOIS CENTRAL RAILROAD COMPANY,

*Defendant-Appellant.*

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 01 C 2165—**James F. Holderman**, *Judge.*

ARGUED FEBRUARY 11, 2002—DECIDED MARCH 6, 2003

Before RIPPLE, DIANE P. WOOD, and WILLIAMS, *Circuit Judges.*

DIANE P. WOOD, *Circuit Judge.* Although the underlying facts of this case relate to a tragic train accident that occurred several years ago in Bourbonnais, Illinois, the question before us in this appeal is a narrow procedural one: can this court review the district court's decision to remand the case to the state court in which it was originally filed? We conclude that the best way to interpret the district court's order is as one finding that it had no subject matter jurisdiction over the claims that were

remanded. That being the case, this court has no appellate jurisdiction over the district court's remand order. Furthermore, even if we are wrong and the order was simply a decision to remand all supplemental state claims to the state court, we would exercise our jurisdiction to find that there was no abuse of discretion in that decision. We therefore dismiss this appeal for lack of appellate jurisdiction.

**I**

On March 15, 1999, an Amtrak passenger train known as the *City of New Orleans* (made famous in a song written by Steve Goodman and performed by Arlo Guthrie and later Willie Nelson) collided with a semi-tractor trailer loaded with steel rebar at a railroad crossing in Bourbonnais, Illinois. The *City of New Orleans* derailed as a result of the collision, resulting in significant injury and the loss of many passengers' lives. This suit, along with more than fifty others, was filed in Illinois state court by injured passengers and the estates of those killed as a result of the collision. The plaintiffs alleged negligence, strict products liability and breach of implied warranties on the part of several defendants, including General Electric, which designed and manufactured the locomotive that pulled the *City of New Orleans*. The additional defendants were the manufacturers, owners, and operators of the equipment involved in the accident. Two from that group are relevant to this appeal: Illinois Central, which operates the tracks on which the *City of New Orleans* traveled, and Birmingham Steel Company, which loaded the steel rebar onto the trailer involved in this collision from its adjacent manufacturing facility. Amtrak, though not initially named as a defendant in this suit, plays a role in the issues before us as well.

Essentially, the procedural posture of this case can be boiled down to a simple pattern. Plaintiffs (A) filed suit in state court raising a number of state law claims against a set of defendants (B through *n*). One of those defendants, GE, removed the case to federal court, asserting as a basis for removal the argument that the federal Locomotive Inspection Act, 49 U.S.C. § 20701, *et seq.*, "completely preempted" the state law claims. (In other words, GE claimed that any lawsuit these plaintiffs were bringing was inevitably and necessarily based on a federal question, and thus removal was available under 28 U.S.C. § 1441(a) and (b).) Later, defendant Birmingham Steel filed a third-party complaint pursuant to FED. R. CIV. P. 14 against Amtrak, which is a federal instrumentality. The district court initially concluded that GE's "complete preemption" argument was correct, and thus that the removal was properly based on the presence of a federal question (and supplemental jurisdiction over the remaining claims). The court then dismissed all claims that the plaintiffs had asserted against GE (all of which relied on state law) on preemption grounds. Finally, turning to the other defendants, the court ascertained that none of them was arguing that federal question jurisdiction existed based on the "complete preemption" idea. In the absence of a federal question, and in the absence of the complete diversity required by 28 U.S.C. § 1332, he concluded that the case had to be remanded to state court. Believing that the order of remand was erroneous, Illinois Central filed an appeal to this court. (Plaintiffs have not filed a cross-appeal from the order dismissing their claims against GE, and thus we have no occasion to rule on the correctness of the findings supporting that order.)

**II**

The first question we must decide is whether we have appellate jurisdiction over Illinois Central's challenge to

the remand order. After devoting scant attention to this threshold question in its opening brief, Illinois Central urged us to find such jurisdiction in its reply brief. Plaintiffs-appellees squarely challenged appellate jurisdiction in their brief. Even if they had not, however, we would have had an independent duty to satisfy ourselves that jurisdiction existed before we could proceed to the merits of the appeal.

The reason why appellate jurisdiction is problematic, at best, comes from the language of the statute governing removals and remands. In deceptively simple words, 28 U.S.C. § 1447(d) says

> An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise, except that an order remanding a case to the State court from which it was removed pursuant to section 1443 of this title [which applies only to civil rights cases] shall be reviewable by appeal or otherwise.

The naive reader might think that this meant no appellate consideration by appeal, by writ of mandamus, or by any other device that lawyers might serve up, but that reader would be wrong. In a line of cases that began with *Thermtron Products, Inc. v. Hermansdorfer*, 423 U.S. 336 (1976), the Supreme Court has adopted a more nuanced interpretation of the statute, and it is therefore the *Thermtron* approach we are bound to follow.

In *Thermtron* itself, the Court faced an insubordinate district court judge who had remanded cases to the state court because his docket was overcrowded. The court of appeals had reviewed the propriety of these remands by means of a writ of mandamus, and the question before the Supreme Court was whether this was possible in light of the § 1447(d) ban on review "on appeal or otherwise." Using

a close reading of the statute as a whole, the Court concluded that the § 1447(d) ban on appellate consideration of remand orders had to be linked to the reasons for remand found in § 1447(c). 423 U.S. at 346. If the district court announced that its remand order was based on one of the grounds for remand recognized in § 1447(c) (essentially, defects in removal procedure or want of subject matter jurisdiction), then review was barred. If the district court's order fairly read indicated that it was remanding for some other reason—if it was potentially *ultra vires*—then some form of appellate review could proceed. *Id.* In *Thermtron* itself, after accepting jurisdiction, the Court concluded that overcrowded dockets was not a permissible reason for remand. In the later case of *Quackenbush v. Allstate Insurance Co.*, 517 U.S. 706, 711-12 (1996), the Court agreed that remand in conjunction with a decision to abstain fell outside the scope of the § 1447(c) reasons and was thus reviewable despite § 1447(d); it then concluded on the merits that the remand order was unwarranted.

The Court has made it clear, however, that the *Thermtron* holding was not an open-ended invitation to exercise appellate review over remand decisions. To the contrary, it has three times cautioned that the *Thermtron* exception to § 1447(d) is to be narrowly construed. Just over a year after *Thermtron* was decided the Court issued a terse, *per curiam* opinion reversing the Fifth Circuit's decision to reverse and remand a case to the district court for reconsideration of a remand order that had been based upon a (possibly erroneous) finding that diversity jurisdiction was lacking. See *Gravitt v. Southwestern Bell Telephone Co.*, 430 U.S. 723, 723-24 (1977). In doing so the Court stressed the fact that the appeals courts are entirely without jurisdiction to review a remand order based on jurisdictional grounds, and that nothing in *Thermtron* was to the contrary. *Id.* Nearly a decade later

in *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 356 (1988), the Court described *Thermtron* as "a response to a clearly impermissible remand," and hence as something that did not forbid a district court from remanding pendent state-law claims. Finally, in *Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 128 (1995), the Court held that a district court's order remanding a bankruptcy case to state court on the basis of untimely removal fell within the review prohibition of § 1447(d). Interestingly, Justice Kennedy (joined by Justice Ginsburg) filed a concurring opinion in *Things Remembered* in which he characterized *Carnegie-Mellon* as an opinion limiting *Thermtron*'s scope. He specifically distinguished between the legitimacy of remanding a pendent or supplemental state claim to state court, on the one hand, and the possibility of judicial review of such an order, on the other. See 516 U.S. at 130. The latter issue, he pointed out, was not before the Court in *Things Remembered. Id.*

Before turning to the further development of *Thermtron* in the lower courts, it is worth pausing for a moment to consider why Congress might have included § 1447(d) in the Judicial Code. The answer is apparent: it wanted to expedite the process of choosing a forum for litigation and to avoid exactly the kind of lengthy proceeding we are having in the present case. It is a one-bite-at-the-apple scheme, with the narrow *Thermtron* exception for truly abusive situations, plus the *Quackenbush* exception for unwarranted applications of the slippery abstention doctrines. Normally, however, a litigant is entitled to remove a case from state court (a very mechanical procedure), to have the federal court test the propriety of the removal, and then to proceed with the case in either the federal court or the state court without further ado. The only thing that is at stake is the forum that will hear a claim. This is certainly not an unimportant matter, but it is not so fundamental that a second or third layer of judges must

test its correctness. And as the Court has noted in a case not involving § 1447(d), an order resolving a dispute over where litigation shall proceed is not an appealable final order, nor does it fall within the exception carved out by the collateral order doctrine for significant claims that are otherwise effectively unreviewable on appeal. See *Lauro Lines s.r.l. v. Chasser*, 490 U.S. 495, 498 (1989). This and the Supreme Court's receptivity to arbitral fora as alternatives to courts, its acceptance of forum selection clauses in contracts, and its frequent reminders that the state courts are fully capable of adjudicating federal claims and are entitled to respect by federal courts, all support the idea that at some point litigation over the choice of a courtroom must end. Section 1447(d) establishes that endpoint for almost all cases that are removed to federal court: it comes when the district court judge makes the call, and it therefore falls outside the normal pattern of cases in which an appeal is either immediately or ultimately available. While we are certainly obliged to apply *Thermtron* and *Quackenbush,* we must also take seriously the cautionary language in *Gravitt*, *Carnegie-Mellon* and *Things Remembered.* Otherwise, § 1447(d) will cease to play any meaningful function. Perhaps that would be good policy, but it is a policy that only Congress can implement; as long as the statute is on the books, it is binding on the federal courts.

It is against that background that we must evaluate one possible approach that arguably would support our appellate jurisdiction here. Some courts appear to follow a rule under which appellate review is permissible if a jurisdictional remand occurs as a result of "later events" in a case. See *In re Amoco Petroleum Additives Co.,* 964 F.2d 706, 708-09 (7th Cir. 1992) ("[W]e understand *Carnegie-Mellon* to permit review when the district court believes that removal was proper and that later developments authorize remand."); *In re Shell Oil Co.*, 966 F.2d

1130, 1132 (7th Cir. 1992) (same). See also *Poore v. American-Amicable Life Ins. Co.*, 218 F.3d 1287, 1291 (11th Cir. 2000); *Trans Penn Wax Corp. v. McCandless*, 50 F.3d 217, 223 (3d Cir. 1995); *Bogle v. Phillips Petroleum Co.*, 24 F.3d 758, 761-62 (5th Cir. 1994); *Van Meter v. State Farm Fire & Cas. Co.*, 1 F.3d 445, 450 (6th Cir. 1993). But see *Angelides v. Baylor College of Med.*, 117 F.3d 833, 836 & n.3 (5th Cir. 1997) ("a remand order based on § 1447(c) jurisdictional grounds is not reviewable even if based on a post-removal event"); *Linton v. Airbus Industrie*, 30 F.3d 592, 599-600 & n.38 (5th Cir.), *cert. denied*, 513 U.S. 1044 (1994) (same); *Nutter v. Monongahela Power Co.*, 4 F.3d 319 (4th Cir. 1993) (declining to address whether appellate review exists for remand for lack of subject matter jurisdiction because of post-removal occurrences).

In our view, however, it would be a mistake to think that there was a hard-and-fast rule to that effect (and we thus have no necessary quarrel with the holdings of the cases cited in the previous paragraph). All later events are not equal. Some, such as a district court's conclusion that an initial acceptance of a claim of "complete preemption" was erroneous, reveal that the federal court never had jurisdiction of the case to begin with. Other later events, such as a *bona fide* loss of diversity of citizenship or an ultimate judgment for less than the jurisdictional amount, may not have any jurisdictional significance at all. Still others affect only the supplemental jurisdiction of the court. If we are dealing with the first of these categories—a later decision that jurisdiction never existed at all over the case—there is nothing in the language of § 1447(c) that makes the timing of the district court's jurisdictional determination significant. To the contrary, that statute makes it clear that defects *other than* the lack of subject matter jurisdiction must be raised within 30 days after the notice of removal, but a district court must remand a case "at any time before final judgment" if it

concludes that it lacks subject matter jurisdiction. 28 U.S.C. § 1447(c). *Thermtron* instructed that § 1447(c) and (d) must be read together, as a unit; if that is true, then the most logical result would be to say that *any* remand based on a conclusion that jurisdiction was lacking at the time of removal is covered by § 1447(c), no matter when that fact becomes apparent, and thus that appellate consideration of any such remand is barred by § 1447(d).

The present case, in our view, is best regarded as one in which the court never had any jurisdiction over the claim. Granted, the court's order is not as clear as it might be with respect to its own jurisdiction. In the order addressing Illinois Central's motion for reconsideration of the remand order, the judge actually said "this court *likely* enjoys subject matter jurisdiction over this ligitation," but it then found that Illinois Central had waived any claim that complete preemption supported jurisdiction. We agree with our dissenting colleague that the jurisdiction of the court cannot be conferred by consent, and cannot in a certain sense be defeated by waiver. On the other hand, courts normally do not force parties to file particular defenses or claims; our reported cases are replete with examples of both claims and defenses that are waived. Illinois Central's concession here that the only pertinent form of preemption that could be asserted was conflict preemption made it clear to the court that nothing but state law claims over which it had no jurisdiction were before it. On that understanding, we read the court's remand order as one based on an ultimate lack of its own subject matter jurisdiction over the claims. We note that the court did not say that it had jurisdiction over the claims under the supplemental jurisdiction statute, 28 U.S.C. § 1367. But the fact that the court may have made a mistake about its jurisdiction over the remaining claims does not defeat the bar found in § 1447(d). See, *e.g.*,

*Gravitt*, 430 U.S. at 723; *Briscoe v. Bell*, 432 U.S. 404, 413 n.13 (1977).

But wait, the defendants argue: remember that Birmingham Steel impleaded Amtrak under Rule 14 before the case was remanded. Even though the original case of A vs. B through *n* did not belong in federal court, what happens when defendant C files a third-party claim against Amtrak? Can the later third-party claim save federal jurisdiction over the whole suit? It cannot, for the reasons we explain in more detail in Part III of this opinion. For present purposes, however, the only important point is that the district court did not *think* that Amtrak saved its jurisdiction. As we just noted, the rule of nonreviewability found in § 1447(d) means that even remands based on an erroneous belief in the lack of federal subject matter jurisdiction cannot be reviewed. *Thermtron*, 423 U.S. at 343. Otherwise the rule means nothing at all, because appeals will be taken and sustained in those cases where the district court made a mistake, and rejected in cases where the district court was correct. Even if the district court was wrong that it lacked jurisdiction over the claims that it remanded, the remand would nevertheless be jurisdictional. The only consequence of a mistake is that the case would proceed in state court even though it could have stayed in federal court. The drafters of § 1447(d) must have known that a few such mistakes would occur, but they were willing to accept them. In this case, if Amtrak found itself before a state court as a third-party defendant, it would have the right to remove its own case under federal question jurisdiction, because it is a federal entity in which the United States owns more than 50% of the outstanding stock. See 28 U.S.C. §§ 1331, 1349. It is true that this means it might take Amtrak two steps to remain in federal court instead of one, but it also means that Congress's intent in enacting § 1349 will not be thwarted.

Since the district court's order does not indicate that it believed that either supplemental jurisdiction or the presence of Amtrak saved its jurisdiction, we find that the order of remand was indeed a jurisdictional one. That means it fell within the scope of § 1447(c) and thus that appellate review of the order is unavailable because of § 1447(d). Even if it is proper to rely on a temporal element to the ban on reviewability of jurisdictional remands in some circumstances, this is not one of them. To do otherwise would be to go significantly beyond the holdings of the Supreme Court and the language and purpose of § 1447(c) and (d). That is something we are not willing to do.

### III

Because reasonable people might disagree over the best reading of the district court's remand order, we think it prudent to address the alternative possibility that the court believed that it did have jurisdiction over the case after GE was dismissed, but that a remand was appropriate for some other reason (waiver by the defendants of the "complete preemption" theory of defense, or discretionary exercise of the power to decline supplemental jurisdiction). If that reading is the correct one, then our appellate jurisdiction would be secure and we would have to consider the merits of the district court's decision.

The starting point for that determination would be, once again, a jurisdictional inquiry. What, if anything, supported the *district court's* jurisdiction (as opposed to our own)? Diversity jurisdiction never existed, because citizens of Illinois appeared on both sides of the case. That means that jurisdiction over the case as a whole had to be based upon a federal question. GE claimed below and Illinois Central urges on appeal that the doctrine of "complete preemption" formed the basis of federal ques-

tion jurisdiction in this case. But we simply cannot agree with the district court that "complete preemption" supported the claims against either GE or the defendants who were left after GE was dismissed. That means, of course, that there was nothing in the case to which supplemental jurisdiction could attach. Our conclusion has nothing to do with the fact that the lawyers for the non-GE defendants appear to have disclaimed any reliance on complete preemption. This is a question on which appellate review must be *de novo*, wholly apart from the district court's decision, party waivers, or other stipulations. See *Rogers v. Tyson Foods, Inc.*, 308 F.3d 785, 787 (7th Cir. 2002).

Federal law has not swept away all state law in this field, thereby making any claim the plaintiffs were trying to assert against GE necessarily federal. The discussions in our recent decisions in *Tyson Foods*, *supra*, and *Vorhees v. Naper Aero Club, Inc.*, 272 F.3d 398 (7th Cir. 2001), and the Supreme Court's latest word on the question in *Sprietsma v. Mercury Marine*, ___ U.S. ___, 123 S. Ct. 518, 526-30 (2002) (analyzing Federal Boat Safety Act's preemptive effect), underscore how narrow the ill-named "complete preemption" doctrine is. As we stressed in *Tyson Foods* and *Vorhees* and as we stress again here, this does not mean that the federal statute in question—here the Locomotive Inspection Act—does not have preemptive force. To the contrary, ordinary conflict preemption may well exist with respect to some or all of the claims. But "conflict" preemption, as we noted in *Vorhees*, "is merely a defense to the merits of a claim. As such, according to the well-pleaded complaint rule, it does not provide a basis for federal question jurisdiction." 272 F.3d at 403. We see nothing in the Locomotive Inspection Act to indicate that Congress "clearly intended completely to replace state law with federal law and create a federal forum" at the same time. *Id.* That is what would be necessary to

create "complete" or "field" preemption, as opposed to the more routine conflict preemption. Furthermore, the district court did not inquire into the question whether "the federal claim includes the same ingredients as the state claim and provides some recovery," *id.*, even though that is a prerequisite to finding "complete" preemption. See *Rogers*, 308 F.3d at 788 (emphasizing the need to find a private right of action under the federal law in question). Both with respect to GE's assertion of complete preemption, where the district court erred, and with respect to the other defendants, as to whom the district court properly recognized that only a question of conflict preemption within the competence of the state courts was presented, we believe that the district court itself lacked jurisdiction and thus that remand was required under § 1447(c). (Naturally, the existence of a federal defense to a state claim is not enough to support federal jurisdiction. See, *e.g.*, *Louisville & Nashville R.R. v. Mottley*, 211 U.S. 149, 152 (1908).) Without the "complete preemption" theory to support the claims against the other defendants (and some certainly had nothing to do with locomotive manufacture or safety), there simply was no federal question.

Even if federal jurisdiction was lacking at the outset, the question arises again whether jurisdiction over the case as a whole was somehow created when Birmingham Steel filed its third-party complaint against Amtrak. It is clear that an original, stand-alone lawsuit against Amtrak would fall within the original subject matter jurisdiction of the federal court, pursuant to 28 U.S.C. §§ 1331 and 1349. Nevertheless, we must consider whether the existence of a third-party complaint affects the court's subject matter jurisdiction over the original action. We conclude that it does not. The Supreme Court considered a closely related problem in *Holmes Group, Inc. v. Vornado Air Circulation Systems, Inc.*, 535 U.S. 826

(2002), where the question was whether the Court of Appeals for the Federal Circuit had appellate jurisdiction over a case in which the complaint did not allege a claim under the federal patent law, but a compulsory counterclaim filed pursuant to Rule 13(a) of the Federal Rules of Civil Procedure did. Because the Federal Circuit's appellate jurisdiction extends only to claims that "arise under" the patent laws, the Court had to decide whether the counterclaim was enough to support hat jurisdiction. It answered no. 122 S. Ct. at 1893. Most of its discussion is a general consideration of the well-pleaded complaint rule, and thus is just as applicable to eliance on pleadings under Rule 14 as it was to pleadings under Rule 13. If the plaintiff's well-pleaded complaint is not based on a federal question, there is no § 1331 jurisdiction. *Id.* at 1893-94. To allow even a compulsory counterclaim (which arguably presented a stronger case for jurisdiction than a permissive counterclaim or a permissive third-party action like the one before us) to govern jurisdiction would potentially defeat the plaintiff's choice of forum and "radically expand the class of removable cases." *Id.* at 1894.

The third-party claim might, however, permit the court to exercise supplemental jurisdiction over the original case, if everything arises out of the same constitutional case or controversy. But it is not clear in the present case (because the district court never considered the question) whether all the claims of the plaintiffs arose out of the same transaction or occurrence as the Birmingham Steel third-party complaint against Amtrak. Without a better record, we cannot venture a guess on that point. This kind of constitutional "case or controversy" link is a prerequisite to the assertion of supplemental jurisdiction under 28 U.S.C. § 1367. See *Board of Trustees, Sheet Metal Workers' Nat'l Pension Fund v. Elite Erectors, Inc.*, 212 F.3d 1031, 1037 (7th Cir. 2000). That statute author-

izes supplemental jurisdiction only over claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). The statute goes on to permit supplemental jurisdiction over claims involving the joinder or intervention of additional parties, and so the fact that very few of the parties to the original action were involved in Birmingham Steel's third-party complaint is not necessarily a bar to the exercise of supplemental jurisdiction.

Once again, however, we will assume for the sake of argument that the third-party claim against Amtrak is part of the same Article III case as the entire rest of the action. We cannot find that the district court was compelled to exercise supplemental jurisdiction over the remainder of the case, once Amtrak was before it in one capacity. The normal rule is that district courts have discretion to retain or remand supplemental claims. *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 500-01 (7th Cir. 1999). Here, Judge Holderman appears to have been proceeding on the assumption that he (probably) had jurisdiction over the original GE case. One possible interpretation of his remand order is that he was deciding what to do with the supplemental claims that remained after the GE case was resolved (although he used the language of waiver rather than this terminology). No matter what words he used, however, it is clear enough from his order that he thought the remainder of this case belonged in the state court, and thus he exercised whatever discretion he may have had and chose to remand those claims. If someone wants to litigate Amtrak's derivative liability for this most unfortunate accident, he or she can do so in a separate federal court action. In fact, now that even more cases have been filed, it is possible that there will be an eventual consolidation of cases in the Northern

District of Illinois. As of now, however, there is no rule that permits federal courts to reach out and prevent state courts from proceeding with claims under state law that do not fall within the jurisdiction of the federal courts. The Anti-Injunction Act, 28 U.S.C. § 2283, has no exception for this situation, even though this type of consolidation might be efficient. Furthermore, we have just been reminded by the Supreme Court that a desire to protect federal jurisdiction is not enough to support the removal of essentially state law claims. See *Syngenta Crop Prot., Inc. v. Henson*, ___ U.S. ___, 123 S. Ct. 366 (2002).

## IV

For these reasons, we dismiss this appeal for want of appellate jurisdiction. In the alternative, we conclude that the district court's remand was proper because of a lack of its own subject matter jurisdiction over the case, or (resolving all issues as generously as possible in Illinois Central's favor), there was no abuse of discretion in the decision to relinquish these state law claims among non-diverse parties.

APPEAL DISMISSED.

RIPPLE, *Circuit Judge*, dissenting. As set forth in greater detail below, I believe that 28 U.S.C. § 1447(d) does not bar review of the present appeal. Furthermore, I believe that the district court erred in remanding this case to state court because of Illinois Central's "waiver" of its right to a federal forum; a district court's exercise of jurisdiction over federal claims is mandatory and not subject to waiver. I therefore respectfully dissent.

# I

## A.

Although the majority opinion presents some background, my own review of the record indicates that a more detailed recounting of the factual and procedural underpinnings of the issues presented would be helpful to the reader.

The present case centers on a March 15, 1999, Amtrak passenger train collision near Bourbonnais, Illinois. The injured victims and the deceased victims' estates (collectively the "plaintiffs") filed more than fifty personal injury and wrongful death actions in the Circuit Court of Cook County, Illinois. The complaints alleged negligence, strict products liability and breach of implied warranties on the part of several defendants. General Electric ("GE"), which designed and manufactured the locomotive, also filed an action for declaratory judgment in the Northern District of Illinois seeking a judgment that suits arising out of the Bourbonnais accident were preempted by the Locomotive Inspection Act, 49 U.S.C. § 20701, and that GE had complied with applicable federal law.[1]

---

[1] The defendants are the manufacturers, owners and/or operators of the apparatus and machines allegedly involved in the
(continued...)

## B.

## 1.

GE removed the state cases to federal court and argued that the Locomotive Inspection Act occupied the field of locomotive safety regulation and therefore prevented the plaintiffs from bringing negligence and strict liability claims in state court. All of the defendants consented to removal. On May 8, 2001, the plaintiffs moved to remand. The cases were consolidated with GE's action for declaratory judgment. GE then moved to dismiss the claims against it, contending that they were barred by the Locomotive Inspection Act. On May 23, Birmingham Steel moved for leave to file a third-party complaint against Amtrak. The motion was granted, and Birmingham Steel's complaint was docketed.

On June 12, 2001, the district court held a status hearing. It informed the parties that it had reached a decision on GE's motion to dismiss the counts against it on the ground of preemption and on the plaintiffs' motion to remand. The court further explained that it was circulating a draft opinion to the other judges who had been assigned these cases. Just before this hearing, counsel for General Signal had informed the district court by letter

---

[1] (...continued)
accident. Illinois Central operates the tracks. Safetran Systems Corporation designed, manufactured and sold the grade crossing protection system. General Signal Company produced and installed the automatic crossing gates. Birmingham Steel Company owned and operated a manufacturing facility adjacent to the accident site. Birmingham Steel loaded the rebar onto the trailer and permitted off-duty railroad cars to be stored on its land along the side of the tracks. Melco Transfer, Inc. owned and operated the truck. John Stokes was the truck's driver. And, as noted above, GE designed, manufactured and sold the locomotive that pulled the *City of New Orleans*.

that it was withdrawing its motion to dismiss, which had been based on the preemptive effect of the Federal Railroad Safety Act ("FRSA"), 49 U.S.C. §§ 20101 et seq. At the hearing, the following colloquy occurred between the district court and counsel for Illinois Central and Amtrak:[2]

> The Court:  Is there any other defendant who desires to raise any of these [preemption] claims other than those who have already raised the issue of preemption? I notice that some defendants raised as affirmative defenses but did not move on the question, and I just want to know from the other defendants.

> Ms. Laing:  Your Honor, Susan Laing on behalf of the Illinois Central and Amtrak. We have, in fact, raised preemption as to certain claims—

> The Court:  Yes.

> Ms. Laing:  —against the railroad but not all claims. And, therefore—

> The Court:  Do you want me to address those, or do you want to just wait, as an affirmative defense.

> Ms. Laing:  As a basis for asserting federal jurisdiction, I have taken no position one way or the other.

> The Court:  All right.

> Ms. Laing:  As for an affirmative defense, I have a very strong position that federal law will control and preempt those state-law claims.

> The Court:  Okay. Well, perhaps as to those defendants, such as Amtrak, that have raised the issues

---

[2] Because Amtrak's time for answering the third-party complaint had not expired at the time of the hearing, Amtrak had not yet filed any papers with the district court and counsel had not entered an appearance on behalf of Amtrak.

but have not moved, maybe my opinion will be helpful in understanding what I believe to be the application of the law. . . . Maybe I won't just go ahead and individually address it and say, well, Amtrak has raised as an affirmative defense certain issues to certain claims. I will just go ahead and address the claims that have been presented and briefed and then that won't add to the clutter of the opinion, if that's all right?

Ms. Laing: It's—obviously, I—again, if you're asking my permission, it's absolutely fine. I think that the issues are one and the same whether, in fact, federal law does preempt those areas. So, to that extent, if your opinion wants to address that, it probably would make most sense since everybody is here and all the cases are together.

June 12, 2001 Tr. at 39-40.

After the status hearing, Ms. Laing sent the court a letter dated June 12, 2001. This letter informed the court that, with respect to two of the cases subject to the court's May 16, 2001, consolidation order, there had been no motion to remand. In those cases, Amtrak had been named as a defendant and had removed, asserting federal jurisdiction under 28 U.S.C. §§ 1331 and 1349. In the letter, Ms. Laing also made reference to the district court's inquiry about the cases that had been removed by General Signal but that were now before the court in General Signal's motion to withdraw opposition to remand. The letter stated: "It is my understanding that counsel for General Signal will be providing you with the 'definitive' list of those cases." R.40. The record does not reveal when or whether General Signal provided such a list. By a minute order dated June 12 and entered on the docket on June 13, the district court granted General Signal's motion to withdraw its motion for judgment on the pleadings and its opposition to the plaintiffs' motion to remand.

As far as can be gleaned from the record, Ms. Laing's letter was the last communication between Illinois Central and the district court before the court issued its decision.

**2.**

The district court issued its decision on June 26, 2001. The court initially noted that because "General Signal withdrew its opposition to plaintiffs' motion to remand and its motion for judgment on the pleadings," "this court does not consider the effect of the Federal Railroad Safety Act . . . , upon which General Signal initially relied, and which contains an express preemption clause, on this court's subject matter jurisdiction or the possible pre-emptive effect of the FRSA on plaintiffs' claims." R.44 at 2-3 n.2.

The court then analyzed GE's complete preemption argument with respect to the Locomotive Inspection Act. It held that the Locomotive Inspection Act occupied the field of locomotive safety regulation and that, consequently, any state law cause of action touching on subjects of regulation under the Act implicitly states a federal cause of action. In the court's view, "the removed cases against General Electric fall within the broad scope of actions preempted by the [Locomotive Inspection Act]." R.44 at 9. Therefore, it continued, "all the claims asserted against General Electric in the removed cases are pre-empted by federal law." *Id.* at 14. Thus, the court concluded, GE had the right to remove these cases from state court. The court then dismissed the claims against GE without prejudice. Because the plaintiffs had not alleged any violation of federal law, the court also dismissed Count 2 of GE's action for declaratory judgment, which sought a judgment that GE had complied with applicable federal regulations.

After both concluding that removal had been proper and dismissing the claims against GE, the district court remanded the remainder of the cases to state court. "Because no other defendants have asserted federal preemption as a basis for removal or opposed the state court plaintiffs' motion to remand, all cases which were removed by General Electric are hereby remanded forthwith to the Circuit Court of Cook County." R.44 at 21.

### 3.

Illinois Central filed a motion to reconsider under Rule 59 on July 6, 2001. Illinois Central advanced two arguments in support of its motion. First, it contended that the district court had jurisdiction because of the presence of Amtrak, which had been added as a third-party defendant in a third-party complaint filed by Birmingham Steel on June 8, 2001. Second, Illinois Central submitted that the court had jurisdiction because the FRSA, like the Locomotive Inspection Act, occupied the field of railroad safety completely; consequently, the district court had subject matter jurisdiction.

The district court denied the motion to reconsider. It stated:

> This court agrees with Illinois Central that this court likely enjoys subject matter jurisdiction over this litigation, as recognized in the court's June 26, 2001 order. Nevertheless, this court finds that remand of these cases is warranted because Illinois Central has expressly waived federal preemption or other federal law as a basis for federal subject matter jurisdiction.

R.51, Ex.E at 1. The court concluded that, in the above-quoted colloquy, counsel for Illinois Central waived federal jurisdiction by taking no position on whether the FRSA provided an independent basis for federal subject matter jurisdiction.

The clear import of this exchange between counsel for Illinois Central and the court was that Illinois Central did not intend to assert federal subject matter jurisdiction in this court, but intended to raise its federal preemption defenses in the state court, or at least had no objection to this court remanding this litigation to state court.

*Id.* The court took the view that our decision in *Rothner v. City of Chicago*, 879 F.2d 1402, 1416 (7th Cir. 1989), left open the possibility that the doctrine of waiver might apply in the removal context. The court did not address Illinois Central's specific argument about Amtrak, but determined that Illinois Central had waived reliance on any ground of federal jurisdiction by its failure to respond to the plaintiffs' motion to remand. Illinois Central filed a notice of appeal on August 8, 2001.[3]

## II

## APPELLATE JURISDICTION

As the majority notes, the first issue before this court is whether we have jurisdiction to consider Illinois Cen-

---

[3] On July 27, 2001, plaintiffs in the remanded action filed complaints arising out of the Bourbonnais collision against Amtrak in the United States District Court for the Northern District of Illinois. Illinois Central filed a motion under Rule 60(b)(6) seeking relief from the remand order, arguing that this development would lead to Amtrak's filing third-party actions against the other defendants. The result, according to Illinois Central, would be parallel litigation proceeding in state and federal court, on the same issues, arising out of the same event and involving the same parties. Thus, Illinois Central asked the district court to vacate its remand order to prevent this situation. The district court denied the motion. Illinois Central appealed, and the two appeals were consolidated in this court.

tral's challenge to the remand order. The plaintiffs contend that 28 U.S.C. § 1447(d) bars appellate review of the district court's remand order. For the reasons set forth below, I believe that this court has jurisdiction over the appeal.

## A.

The plaintiffs submit that appellate jurisdiction is barred by 28 U.S.C. § 1447(d). Section 1447(d) provides:

> An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise, except that an order remanding a case to the State court from which it was removed pursuant to section 1443 of this title shall be reviewable by appeal or otherwise.

28 U.S.C. § 1447(d).[4]

Read in isolation, the plain language of § 1447(d) would seem to bar appellate jurisdiction. The Supreme Court, however, has interpreted § 1447(d) narrowly. The Court has ruled that "§ 1447(d) must be read *in pari materia* with § 1447(c), so that only remands based on grounds specified in § 1447(c) are immune from review under § 1447(d)." *Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 127 (1995). Section 1447(c) provides, in relevant part:

> A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court

---

[4] Section 1443 concerns removal in civil rights cases and thus is inapplicable here.

lacks subject matter jurisdiction, the case shall be remanded.

28 U.S.C. § 1447(c). "As long as a district court's remand is based on a timely raised defect in the removal procedure or on lack of subject-matter jurisdiction . . . a court of appeals lacks jurisdiction to entertain an appeal of the remand order under § 1447(d)." *Things Remembered*, 516 U.S. at 127-28.[5] The plaintiffs identify no defect in the removal procedure, or any other defect fitting the first sentence of § 1447(c).

Attention to the development of the rule articulated in *Things Remembered*, both in the Supreme Court and in the courts of appeals, provides significant guidance to the analysis of this case. In *Thermtron Products, Inc. v. Hermansdorfer*, 423 U.S. 336 (1976), the Supreme Court held that § 1447(d) did not bar appellate review of a district court's remand order that was based on the court's overburdened docket. *See Thermtron*, 423 U.S. at 345. The Court traced the history of § 1447(d) and concluded that Congress had intended to link § 1447(d) with § 1447(c). *See id.* at 346-51. After doing so, the Court concluded that "[t]here is no indication whatsoever that Congress intended to extend the prohibition against review to reach remand orders entered on grounds not provided by statute." *Id.* at 350. Thus, "[s]ection 1447(d) is not dispositive of the reviewability of remand orders in and of itself." *Id.* at

---

[5] *Things Remembered* was decided before the 1996 revision to § 1447(c). Before 1996, the statute read "any defect in the removal procedure . . ." and now it reads "any defect other than lack of subject matter jurisdiction . . . ." *Compare* 28 U.S.C. § 1447(c) (2002 Supp.) *with* 28 U.S.C. § 1447(c) (1994). I do not believe this statutory amendment makes any difference in the present case, nor does it overrule the line of Supreme Court cases beginning with *Thermtron Products, Inc. v. Hermansdorfer*, 423 U.S. 336 (1976).

345. Appellate jurisdiction is proper when "the District Court's order was based on grounds wholly different from those upon which § 1447(c) permits remand." *Id.* at 344.

In *Quackenbush v. Allstate Insurance Co.*, 517 U.S. 706, 711-12 (1996), the Supreme Court concluded that appellate jurisdiction was proper over an abstention-based remand order. The district court in *Quackenbush* had decided that abstention under the *Burford* doctrine was appropriate to prevent federal interference with the state's regulation of an insurance company's insolvency; the district court remanded the properly-removed action to state court on that ground. *See Quackenbush*, 517 U.S. at 709-10. The Supreme Court disposed of the § 1447(d) argument, noting that "[t]he District Court's abstention-based remand order does not fall into either category of remand order described in § 1447(c), as it is not based on lack of subject matter jurisdiction or defects in removal procedure." *Id.* at 712.

The courts of appeals have elaborated on the rule announced in *Thermtron*. For instance, in *Benson v. SI Handling Systems, Inc.*, 188 F.3d 780, 782 (7th Cir. 1999), we reviewed a district court's decision to remand to state court on the ground that successive removals are improper. We held: "Neither § 1447(c) nor anything else in the sections of the Judicial Code devoted to removal forbids successive removals. The rule against them—if there is such a rule—is an extra-statutory judicial invention, and thus subject to the appellate process." *Id.* In *Clorox Co. v. United States District Court*, 779 F.2d 517, 520 (9th Cir. 1985), the Ninth Circuit held that a remand on the ground that the removing party had waived its right to remove was reviewable on appeal. *See also Pelleport Investors, Inc. v. Budco Quality Theatre, Inc.*, 741 F.2d 273, 277 (9th Cir. 1985). Several courts of appeals, including ours, have held that sua sponte remands based on defects in the removal procedure are

outside of § 1447(c) and thus subject to appellate review. *See In re Continental Cas. Co.*, 29 F.3d 292, 294 (7th Cir. 1994); *Whole Health Chiropractic v. Humana Med. Plan*, 254 F.3d 1317, 1319 (11th Cir. 2001); *In re FMC Corp. Packaging Sys. Div.*, 208 F.3d 445, 450-51 (3d Cir. 2000); *Page v. City of Southfield*, 45 F.3d 128, 133 (6th Cir. 1995); *In re Allstate Ins. Co.*, 8 F.3d 219, 223-24 (5th Cir. 1993).

In setting the limits of our jurisdiction in conformity with the Supreme Court's interpretive mandates in *Thermtron*, *Things Remembered* and *Quackenbush*, we have said that, when a district court asserts jurisdiction but later events call that jurisdiction into question and ultimately result in a later remand, we have jurisdiction to review that remand order. *See In re Shell Oil Co.*, 966 F.2d 1130, 1132 (7th Cir. 1992); *In re Amoco Petroleum Additives Co.*, 964 F.2d 706, 708-09 (7th Cir. 1992); *Bogle v. Phillips Petroleum Co.*, 24 F.3d 758, 761-62 (5th Cir. 1994). In *Shell Oil*, we reviewed a district court's decision to remand a case, previously removed based on the court's diversity jurisdiction, after the plaintiffs stipulated that they would seek damages below the jurisdictional amount. *See Shell Oil*, 966 F.2d at 1131-32. There, we held that resolution of the case depended on the reason for the district court's remand. *See id.* at 1132. "If the district court believed that the case was properly removed, but that the stipulation justified a remand, then we may review the order." *Id.* "If, however, the district court believed . . . that jurisdiction was missing at the outset, then 28 U.S.C. § 1447(d) would block any review, even though we might disagree with that decision." *Id.*; *accord Van Meter v. State Farm Fire & Cas. Co.*, 1 F.3d 445, 450 (6th Cir. 1993) ("[I]f a district court determines subject matter jurisdiction to have existed at the time of removal, yet remands for alleged lack of subject matter jurisdiction based on some post-removal event(s), the remand order is not a Section 1447(c) remand order and

is reviewable . . . .”). “When the district court appears to have asserted jurisdiction, the possibility that the remand order was issued pursuant to § 1447(c) for lack of jurisdiction is removed.” *Lyons v. Alaska Teamsters Employer Serv.*, 188 F.3d 1170, 1173 (9th Cir. 1999). Stated another way, once the district court makes the unreviewable decision under § 1447(c), unless new facts emerge that call the initial removal into question, any subsequent remand order is subject to appellate review.[6]

These decisions acknowledge that § 1447(c) is “necessarily tied to a temporal reference point, namely, the time of removal.” *Van Meter*, 1 F.3d at 450. “The dispositive question is: ‘When?’ Was there subject-matter jurisdiction at the time of removal, vanishing because of the change in the identity of the plaintiffs? If so, we . . . may review the remand order.” *Amoco Petroleum*, 964 F.2d at 708. “[W]e understand [*Carnegie-Mellon University v. Cohill*, 484 U.S. 343 (1988),] to permit review when the district judge believes that removal was proper and that later developments authorize remand.” *Id.* “If the district court believed that the case was properly removed, but that [subsequent events] justified a remand, then we may review the order.” *Shell Oil*, 966 F.2d at 1132.

### B.

It is with these principles in mind that this court should evaluate the district court’s opinion to determine the precise grounds of its decision. If it was based on one of the grounds set forth in § 1447(c), review is barred. If, however, the district court grounded its decision in a reason not set forth in § 1447(c), then § 1447(d) does not prohibit review by this court.

---

[6] The majority reads these cases as creating a narrow exception.

A "plain and common sense reading" of the district court's June 26 opinion is the starting point for this analysis. *Heaton v. Monogram Credit Card Bank*, 231 F.3d 994, 997 (5th Cir. 2000). The removing defendant, GE, removed this case from state court on the ground that the Locomotive Inspection Act completely preempted any state regulation of locomotive safety; therefore, the court concluded, removal was proper. The district court agreed that the Locomotive Inspection Act occupied completely the field of locomotive safety and therefore permitted removal on the basis of federal question jurisdiction. Had the district court determined that this Act did not occupy the field of locomotive safety and that no other ground for removal was present, and remanded on those grounds, our review would be barred by § 1447(d). However, after resolving the jurisdictional issue in favor of GE, the court proceeded to grant GE's motion to dismiss, a decision also based on the ground of preemption. At this point, GE was no longer a party to the case.

The district court then turned to the remainder of the case. Another defendant, General Signal, had maintained that the FRSA preempted completely the plaintiffs' claims and therefore served as a basis for removal to federal court. After the plaintiffs filed a motion to remand, General Signal initially filed an opposition and moved for judgment on the pleadings on the ground of complete preemption. However, General Signal later withdrew its opposition to the remand and apparently withdrew from the litigation pursuant to a settlement. The district court then remanded the remaining cases to state court "[b]ecause no other defendants have asserted federal preemption as a basis for removal or opposed the state court plaintiffs' motion to remand. . . ." R.44 at 21. Notably, the court did not remand the case because it believed that, once GE was dismissed, federal subject matter jurisdiction had been lost. Nor did it hold that there was not complete

preemption under the FRSA, as General Signal had urged prior to its withdrawal. Indeed, the court specifically noted that it believed that it had subject matter jurisdiction. In its order denying Illinois Central's motion to reconsider, it stated:

> This court agrees with Illinois Central that this court likely enjoys subject matter jurisdiction over this litigation, as recognized in the court's June 26, 2001 order. Nevertheless, this court finds that remand of these cases is warranted because Illinois Central has expressly waived federal preemption or other federal law as a basis for federal subject matter jurisdiction.

R.51, Ex.E at 1.

The district court therefore made clear that its remand was not based on § 1447(c), but on an extra-statutory, or non-statutory ground—the election of the remaining parties not to persist in the position taken by General Signal prior to its withdrawal from the litigation that the FRSA totally preempted the field of railway safety. *Cf. In re Shell Oil Co.*, 631 F.2d 1156, 1157 (5th Cir. 1980) (holding "that the ban on reviewability contained in § 1447(d) is not applicable where the trial judge articulated a reason for remanding the case that is not found in § 1447(c)").

Assessing the district court's statements in the procedural context in which they arose, I cannot agree with the majority that "[t]he present case . . . is best regarded as one in which the court never had any jurisdiction over the claim." *See supra* at 9. The district court did not conclude that it lacked the authority to decide the case. It accepted jurisdiction and resolved one aspect of the case when it determined that the state claims against GE were preempted by the Locomotive Inspection Act. It then reviewed the remainder of the case. It decided to remand the case, not because it believed that it lacked juris-

diction, but because no remaining party continued to assert another ground for removal. The court did not cite § 1447(c) as a basis for its action. Indeed, it stated explicitly that it did not believe that it lacked jurisdiction. The district court remanded the case on the ground of waiver, a ground not listed in § 1447(c). "Neither § 1447(c) nor anything else in the sections of the Judicial Code devoted to removal" authorizes a remand for waiver. *See Benson*, 188 F.3d at 782 (noting that there was nothing in the Judicial Code forbidding successive removals and thus the court of appeals had jurisdiction to review the district court's decision to remand on that ground). Such a rule would be "an extra-statutory judicial invention, and thus subject to the appellate process." *Id.* Therefore, contrary to the view taken by my colleagues, I believe that this court has jurisdiction over this appeal.[7]

## III

### REMAND

Because I believe this court has appellate jurisdiction, I next must consider Illinois Central's contention that the district court should not have remanded the case to state court. The district court stated in its order denying Illinois Central's motion to reconsider that "[t]his court agrees with Illinois Central that this court likely enjoys subject matter jurisdiction over this litigation . . . . Nevertheless, this court finds that remand of these cases

---

[7] Even if the district court concluded that there was no longer a federal question in the case, the court would be called upon to make a supplemental jurisdiction determination under 28 U.S.C. § 1367. Such a decision to remand under § 1367 would also be subject to appellate review. *See Carnegie-Mellon*, 484 U.S. at 355 n.11; *Hudson United Bank v. LiTenda Mortgage Corp.*, 142 F.3d 151, 157 (3d Cir. 1998).

is warranted because Illinois Central has expressly waived federal preemption or other federal law as a basis for federal subject matter jurisdiction." R.51, Ex.E.

In this court, Illinois Central claims that there are two bases for the district court's jurisdiction and that the district court incorrectly ignored both. First, Illinois Central contends that, because Amtrak was a party to the litigation, having been added by Birmingham Steel's third-party complaint, the court had federal question jurisdiction under 28 U.S.C. § 1331. Second, Illinois Central argues that the FRSA occupies the field of railroad safety; therefore the plaintiffs' claims, although styled as state law tort actions, were really federal claims that invoked the district court's federal question jurisdiction.

## A.

The district court was confronted with a highly complex, unusual and fluid situation. Yet, after reflection, I must conclude that the court misapprehended the limitations on its authority to remand and its corollary responsibility to exercise jurisdiction over federal claims. It appears that this misstep may be due to a failure to distinguish sufficiently the criteria governing removal from the situations in which a remand is permitted.[8] The Fifth Circuit has had occasion to explain this distinction:

---

[8]  In my view, the majority attaches far too little significance to this distinction. *See supra* at 13-15. The question before this court is not whether a third party complaint, with Amtrak as the third-party defendant, initially can be removed to federal court; the question is whether a third-party complaint against Amtrak, that originated in district court, can be remanded to state court given the statutory restrictions on remand. This question is addressed *infra* at Part III.B.

Unquestionably, a party may implicitly waive its right to remove a case by failing timely to file a notice of removal. Likewise, a party may implicitly waive its right to contest the removal of a case on procedural grounds by failing timely to move for remand. Nevertheless, the ability of a party to remove a case and the ability of a court to remand a case that has been properly removed by a party, are distinct concepts not necessarily subject to the same rules. Although parties may waive their rights to remove a case or to contest the removal procedure, they may neither confer subject matter jurisdiction on the district court nor strip it of such jurisdiction by agreement or waiver. The authority of a district court to remand a properly removed case is dependent on the nature of the claims which the case comprises and the nature of the district court's jurisdiction over those claims. The fact that the FDIC waived its right to remove the instant case is irrelevant to the determination of whether the case should have or could have been remanded once it had been properly removed by another party who had not waived the right to remove.

*Buchner v. FDIC*, 981 F.2d 816, 818 (5th Cir. 1996) (citations omitted). Consequently, the inquiry this court must address is whether the district court had the authority to remand the third-party action involving Amtrak in the circumstances presented here.

The authority of a district court to remand a case is not discretionary. Indeed, as explained by the Supreme Court in *Thermtron Products, Inc. v. Hermansdorfer*, 423 U.S. 336, 351 (1976), that power is quite circumscribed: "[W]e are not convinced that Congress ever intended to extend carte blanche authority to the district courts to revise the federal statutes governing removal by remanding cases on grounds that seem justifiable to them but

which are not recognized by the controlling statute." The Court reinforced and elaborated on its *Thermtron* decision in *Carnegie-Mellon University v. Cohill*, 484 U.S. 343 (1988):

> The *Thermtron* decision was a response to a clearly impermissible remand, of a kind very different from that at issue here. In *Thermtron*, the District Court had no authority to decline to hear the removed case. The court had diversity jurisdiction over the case, which is not discretionary. Thus the District Court could not properly have eliminated the case from its docket, whether by a remand or a dismissal.

*Id.* at 355-56. I believe, therefore, that this court must turn to the statutory bases for remand to determine if a remand was appropriate in the circumstances presented here.

## B.

### 1.

There are three statutory provisions that address a district court's authority to remand. One grant of remand authority is found among the removal provisions, 28 U.S.C. § 1447(c). Section 1447(c) states:

> A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment, it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.

28 U.S.C. § 1447(c). It is well established that the district court's jurisdictional inquiry for purposes of § 1447(c) is determined as of the time the removal petition is filed.

*See Gossmeyer v. McDonald*, 128 F.3d 481, 487 (7th Cir. 1997) ("[W]hether subject matter jurisdiction exists is a question answered by looking at the complaint *as it existed at the time the petition for removal was filed.*" (emphasis in original)).

**2.**

28 U.S.C. § 1441 also speaks to a district court's authority to remand. Specifically, § 1441(c) provides that

> [w]henever a separate and independent claim or cause of action within the jurisdiction conferred by section 1331 of this title [federal question jurisdiction] is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters in which state law predominates.

28 U.S.C. § 1441(c). By its terms, § 1441(c) applies only to "separate and independent" claims. In *American Fire & Casualty Co. v. Finn,* 341 U.S. 6, 12 (1951), the Supreme Court explained that "[t]he addition of the word 'independent' gives emphasis to congressional intention to require more complete disassociation between the federally cognizable proceedings and those cognizable only in state courts before allowing removal."[9] The claims to which § 1441 applies is further limited by the requirements that the claims be "joined" and "removed." Section 1441(c) applies only to claims that were joined with a federal

---

[9] The requirements of separateness and independence have caused this court to question whether any third-party complaints can be removed pursuant to this section, because they most often are "dependent," if not "parasitic," to the federal claim. *See Thomas v. Shelton*, 740 F.2d 478, 486 (7th Cir. 1984).

question claim while in state court, *cf. First National Bank of Pulaski v. Curry*, 301 F.3d 456, 465 (6th Cir. 2002) (interpreting "joined" "narrowly to apply only to claims joined by the plaintiff in the original state court action"), and also that were "removed"; § 1441(c) does not encompass claims added in federal court.

### 3.

28 U.S.C. § 1367 provides a final statutory basis for remanding a claim to state court.[10] Under § 1367(c), a court may decline to exercise supplemental jurisdiction over a claim that is related to the underlying action if "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction," or if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367. Although § 1367, strictly read, does not speak in terms of a "remand," § 1367 codifies the common-law doctrine of pendent jurisdiction. In *Carnegie-Mellon*, the Supreme Court established the right of a district court to remand, as opposed to only dismiss, a pendent claim:

---

[10] Section 1367 codified the principles of pendent jurisdiction discussed by the court in *Carnegie-Mellon*. In that case, the Supreme Court held that a district court had the discretion to remand pendent state-law claims once the federal claims on which a proper removal were based dropped out. *See Carnegie-Mellon*, 484 U.S. at 357. "The discretion to remand enables district courts to deal with cases involving pendent claims in the manner that best serves the principles of economy, convenience, fairness, and comity which underlie the pendent jurisdiction doctrine." *Id.* The Supreme Court specifically noted in *Carnegie-Mellon* that "the remand authority conferred by the removal statute and the remand authority conferred by the doctrine of pendent jurisdiction overlap not at all." *Carnegie-Mellon*, 484 U.S. at 355 n.11.

> [A] district court has discretion to remand to state court a removed case involving pendent claims upon a proper determination that retaining jurisdiction over the case would be inappropriate. The discretion to remand enables district courts to deal with cases involving pendent claims in the manner that best serves the principles of economy, convenience, fairness, and comity which underlie the pendent jurisdiction doctrine.

*Carnegie-Mellon*, 484 U.S. at 357. The power to remand, however, is limited to claims over which the district court has only "supplemental" jurisdiction; the power does not extend to claims over which the district court has original jurisdiction. *See In re City of Mobile*, 75 F.3d 605, 607 (11th Cir. 1996); *Borough of W. Mifflen v. Lancaster*, 45 F.3d 780, 787 (3d Cir. 1995).[11]

Thus, absent a claim for abstention, a district court may remand when one of three situations arises: 1) it discovers that it lacked subject matter jurisdiction for the initial removal; 2) it concludes that state law predominates in a removed claim that is separate and independent from the removed federal question claim; or 3) it determines that it should not exercise supplemental jurisdiction over a state law claim.

## C.

Evaluating the district court's action against the statutory options outlined above, I believe that the district

---

[11] The district court also may remand, as opposed to dismissing, a case on abstention grounds if "the relief being sought is equitable or otherwise discretionary." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 731 (1996). However, there is no claim that considerations of abstention motivated, or could motivate, the district court's decision to remand in the present action.

court's remand order may have "seem[ed] justifiable" to the court, but was not cognizable under "the controlling statute[s]." *Thermtron*, 423 U.S. at 351. First, § 1447(c) does not provide a basis for the remand ordered by the district court. As noted previously, § 1447(c) is "necessarily tied to a temporal reference point, namely, the time of removal." *Van Meter v. State Farm Fire & Cas. Co.*, 1 F.3d 445, 450 (6th Cir. 1993). With respect to the initial removal, the district court agreed with the removing defendant, GE, that the Locomotive Inspection Act occupied completely the field of locomotive safety, that this complete preemption provided a basis for federal question jurisdiction and, therefore, that removal was proper. Consequently, the district court did not, and could not, rely on § 1447(c) to remand Amtrak's claim after it made the determination that initial removal was proper.

Neither can the district court's order be grounded in § 1441(c). Section 1441(c) allows a district court to remand only "separate and independent" claims joined and removed with a federal question claim. However, as a third-party claim, the claim against Amtrak is not separate and independent from the actions brought by the plaintiffs against the original defendants. More fundamentally, the action was not "joined" and "removed" with the action against GE; the third-party action against Amtrak was instituted in district court.

Finally, the district court's remand order finds no support in § 1367. Section 1367 allows a district court to remand a claim based on the court's "supplemental jurisdiction." The authority to remand pursuant to § 1367 does not encompass claims over which the district court has federal question jurisdiction. Here, the presence of Amtrak in the litigation constituted a valid basis for federal question jurisdiction. Because Amtrak is a federally chartered corporation in which the United States owns more than 50% of the outstanding stock, it may litigate in

federal court. *See* 28 U.S.C. § 1349; *see, e.g.*, *Wyant v. Nat'l R.R. Passenger Corp.*, 881 F. Supp. 919, 920 (S.D.N.Y. 1995) (stating that it is "well-settled" that federal courts have jurisdiction over cases in which Amtrak is a party). Cases involving federally chartered corporations such as Amtrak arise under the laws of the United States and, therefore, come within the court's federal question jurisdiction, 28 U.S.C. § 1331. *See Wayne v. Tenn. Valley Auth.*, 730 F.2d 392, 397 (5th Cir. 1984) ("[A] claim against a wholly owned federal corporation created under an Act of Congress, such as TVA, falls within the general grant of federal question jurisdiction found in § 1331 . . . ."); *Hollus v. Amtrak Northeast Corridor*, 937 F. Supp. 1110, 1113-14 (D.N.J. 1996) (stating that "federal courts have subject matter jurisdiction over any action involving Amtrak" and that jurisdiction is based on the "federal question" statute); *In re Rail Collision Near Chase, Maryland on January 4, 1987 Litig.,* 680 F. Supp. 728, 731 (D. Md. 1987) ("Congress created Amtrak and Conrail as private corporations under state law, but subject to federal question jurisdiction as long as the federal government held majority ownership."). Consequently, the district court had original federal question jurisdiction over the claims involving Amtrak. Because the district court's jurisdiction over the claim is original, and not supplemental, § 1367 cannot provide a basis for remand of that claim.

**D.**

In addition to having jurisdiction because of Amtrak's presence, the district court also had been presented with the contention that the FRSA completely preempted the field of railroad safety and, therefore, provided an independent basis for retaining jurisdiction. The district court made it clear in denying the post-trial motion that it did not consider that claim to be a frivolous one. It also

was incumbent on the district court to determine whether the FRSA did, in fact, preempt the field of railroad safety—thereby providing an independent basis for federal jurisdiction—and, if so, to retain jurisdiction over the claims affected. *See Buchner v. FDIC*, 981 F.2d 816, 821 (5th Cir. 1993) (discussed *infra* at Part III.E.).

## E.

The plaintiffs submit that, even if the district court had subject matter jurisdiction over the third-party claim against Amtrak, this court should affirm the district court's judgment on the basis of waiver. However, because the district court had a duty to exercise its subject matter jurisdiction, I believe the decision to remand to state court on the ground of waiver was erroneous.

Two decisions—the Fifth Circuit's decision in *Buchner v. FDIC*, 981 F.2d 816 (5th Cir. 1993), and the Ninth Circuit's decision in *Brockman v. Merabank*, 40 F.3d 1013 (9th Cir. 1994),—not only provide guidance with respect to the issue of waiver, but also speak to the broader issue of a district court's remand authority. In *Buchner*, the FDIC sued the Buchners in state court to collect monies they owed a bank under the FDIC's receivership. *See Buchner*, 981 F.2d at 817. The Buchners asserted counterclaims against the FDIC; the FDIC then removed the case to the district court. *See id.* Removal was untimely, however, and the district court remanded the case to state court. *See id.* After amending their pleadings several times, the Buchners added an FBI agent and the Dallas office of the FBI to the case by filing a motion for sanctions against them; the agent timely removed the entire case to federal court pursuant to 28 U.S.C. §§ 1442(a)(1) and 1446(b). *See id.* The Buchners moved to dismiss their claims against the FBI and moved to remand the case after those parties were dismissed. *See id.* at 818. The

FDIC opposed the motion to remand, but the district court found that it had waived its right to removal. *See id.* The court declined to exercise supplemental jurisdiction over the remainder of the case and remanded it to state court. *See id.* The FDIC appealed, and the Fifth Circuit reversed. *See id.* at 820.

Noting the general principle that parties may neither confer jurisdiction on a federal court, nor take it away, *see Buchner*, 981 F.2d at 818, the court first determined that jurisdiction was proper in the district court because the FDIC was a party. *See id.* at 819. The court then assessed the scope of the district court's statutory power to remand under 28 U.S.C. §§ 1441(c) and 1447(c).

> Under these two sections, the district court has general authority to remand a case under any of the following circumstances: 1) it has discretion to remand state law claims that were removed along with one or more federal question claims; 2) it must act on a timely motion to remand based on a defect in the removal procedure; and 3) it must remand a case over which it has no subject matter jurisdiction.

*Id.* Finally, the court noted that, under *Carnegie-Mellon,* 484 U.S. at 357, a district court could remand a case after all the federal claims dropped out, leaving only state-law claims. *See id.* at 820. The court determined that none of those remand options were present because the district court had original subject matter jurisdiction over the case under 28 U.S.C. § 1331. *See id.* at 819-20. In conclusion the court stated:

> The case thus having been correctly removed, the district court could only have remanded it under authority of one of the limited number of enumerated grounds for remand, none of which are present in the instant case. The district court has subject matter jurisdiction over all of the Buchners' claims against

the FDIC by virtue of 12 U.S.C. § 1819(b)(2)(A) and 28 U.S.C. § 1331. Subject matter jurisdiction can neither be conferred nor destroyed by the parties' agreement or waiver. Here the FDIC's earlier waiver of its right to remove the case cannot affect the courts subject matter jurisdiction over the Buchners' claim against the FDIC. . . . As all of the Buchners' claims against the FDIC are treated as arising under the laws of the United States, the district court's subject matter jurisdiction over those claims is mandatory so it has no discretion to remand them to state court.

*Id.* at 821.

In *Brockman v. Merabank,* 40 F.3d 1013, 1017 (9th Cir. 1994), the Ninth Circuit concurred with the Fifth Circuit's analysis in *Buchner.* In *Brockman,* the plaintiff sued Merabank, which was later placed in receivership by the Resolution Trust Corporation ("RTC"). *See id.* at 1015. The plaintiff amended her complaint to add the RTC. *See id.* She later filed a third amended complaint, which added the FDIC as a party. *See id.* The FDIC removed the action, and then moved to dismiss the complaint. *See id.* The district court granted the motion, and the FDIC was dismissed as a party. *See id.* Then, at a "pretrial conference, the district court *sua sponte* ordered the case remanded to state court for lack of jurisdiction. The court reasoned that it lacked jurisdiction because the party seeking removal, the FDIC, had been dismissed from the case." *Id.* "In a subsequent order, the court stated that '[i]n its discretion, the Court could have retained the case but a decision was made not to retain it.'" *Id.*

The RTC appealed, and the Ninth Circuit reversed. *See Brockman,* 40 F.3d at 1017. First, the court found that remand was not warranted by § 1447(c) because the district court "did not lack subject matter jurisdiction." *Id.* at 1016. The court further held: "A remand order was

not authorized by § 1441(c) either. The claims against the non-RTC defendants are not 'separate and independent.'" *Id.* at 1016-17. The Ninth Circuit determined that the district court had no "jurisprudential authority" to remand: "Like diversity jurisdiction, original jurisdiction is not discretionary. Thus, the district court could neither dismiss the entire case for lack of jurisdiction nor remand it." *Id.* at 1017. The Ninth Circuit also rejected the plaintiff's argument that the RTC had waived its right to proceed in federal court by its failure to remove. "Although the RTC waived its right to seek removal, it did not waive its right to a federal forum." *Id.* The court found that the "district court's retention of this case was mandatory, not discretionary." *Id.*

*Brockman* and *Buchner* make clear that the district court has an independent obligation to determine whether it has subject matter jurisdiction. If that examination reveals the existence of subject matter jurisdiction, the exercise of that jurisdiction is mandatory, not discretionary, and the actions of a party cannot affect the court's responsibility to exercise its jurisdiction. Consequently, because the district court had subject matter jurisdiction over the claim involving Amtrak, the district court's exercise of that jurisdiction was mandatory, and the actions of Amtrak's counsel did not divest the court of its responsibility to adjudicate the claim at issue.

In sum, I believe that this court has jurisdiction over the present appeal because 28 U.S.C. § 1447(d) does not bar appellate review. Furthermore, I believe that the district court erred in remanding the case on the ground that Illinois Central had waived its right to a federal forum. The court had jurisdiction over the third-party claim against Amtrak; the exercise of jurisdiction over that claim is mandatory and not subject to waiver. Even if the district court was justified in overlooking the presence of Amtrak as an initial matter in the June 26 ruling, it was

made aware of Amtrak's presence and the jurisdictional implications of that presence in Illinois Central's Rule 59 motion to reconsider.

For these reasons, I would remand this case to the district court to retain jurisdiction of the claim against Amtrak and then to consider the appropriate disposition of the remainder of the claims before it. Specifically, I believe that the district court ought to determine whether the state law claims are preempted by the FRSA. If they are preempted, the district court should retain jurisdiction of the claims; if they are not, the district court must determine whether, according to the criteria set forth in 28 U.S.C § 1367, it ought to retain jurisdiction over the claims or remand them to the state court. Consequently, I would reverse the judgment of the district court and remand the case for further proceedings.

A true Copy:

       Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*